## Cincinnati Equipment Company v. Big Muddy River Consolidated Coal Company.

(Decided March 27, 1914.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Contracts—Sales—Offer of Bargain Imposes No Obligation Until Accepted—It is a well known principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification or departure from those terms invalidates the offer unless the same be agreed to by the person who made it. Until the terms of the agreement have been assented to by both parties, negotiation is open and imposes no obligation upon either. An attempted acceptance which seeks to modify one or more terms of the offer is of no legal effect as an acceptance. It is really a rejection of the offer and a proposition in lieu of the original offer, and must be accepted by the party making the original offer in order to constitute an original agreement.

2. Contracts—Tentative Agreement—Change of By Subsequent Writing—Effect of.—Where the prospective vendor, after the execution of a tentative sales agreement which left open certain points for subsequent agreement, submits to the prospective vendee a draught of a contract which changes the person of the vendor, the means of securing deferred payments, and deprives the vendee of the choice among articles of similar kind, this is in legal effect an abandonment by the vendor of the original agreement and a proposition of a different agreement, which requires an unqualified acceptance on the part of the vendee to constitute a binding contract.

3. Contracts—Acceptance of Substituted Contract—What Not An Acceptance.—Failure or omission to reject an offer is not equiv-

alent to an acceptance; nor is the fact that the vendee may have mentioned, as a reason for not accepting the substituted agreement, only one of the grounds upon which he might have objected to it, to be regarded as a waiver of such other objections.

HARMON, COLSTON, GOLDSMITH & HOADLEY and TRABUE DOOLAN & COX for appellant.

WEHLE & WEHLE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action, as originally framed, sought the reformation of an alleged written contract claimed to have been made between appellant and appellee Oct. 12, 1907, for the sale by the former to the latter of 100 second-hand coal cars at $70,0 per car; 25 per cent of the aggregate price to be paid in cash, the remainder in twelve equal monthly installments, beginning after January 1; 1908; it being alleged in the petition that the contract as agreed on provided that the cars were to be delivered December 1, 1907 and that the first deferred monthly payment should be made February 1, 1908, but that by mistake of the parties these two provisions were omitted from the contract. In addition to seeking the reformation of the instrument, the petition prayed for its specific performance. Later, however, appellant, by an amended petition, withdrew the demand for specific performance and in lieu thereof set up claim to $20,000, damages for an alleged breach of the contract by appellee. The writing in question is as follows:

"Louisville, Ky., Oct. 12, 1907.
"The Cincinnati Equipment Company,
Cincinnati, O.
"Gentlemen:
"Reducing to writing the result of the several conferences between Mr. Warner, representing your Company, and myself, representing the Big Muddy River Consolidated Coal Company, I beg to say that we have now come to the following agreement: That we are to take from you one hundred (100) cars out of the Puritan Coal Company, or the Morrisdale Company, which cars were inspected by our Mr. Rhoads.
"They are to be painted and put in such condition as to pass M. C. B. inspection. We are to pay you for said cars the sum of seven hundred ($700.00) dollars

each; delivered at Altoona, or approximately Altoona, and we are to pay you 25 per cent cash, and the balance in twelve monthly installments, beginning after the 1st of January, 1908.

"This agreement is merely tentative, and the cars are to be placed with us upon a trust, the ownership to remain in the trustees until final payment is made. These papers are to be in the usual and ordinary form, a copy of which will be submitted to the Big Muddy River Consolidated Coal Company later on.

"We will want delivery of these cars about the 1st of December, 1907, a few days later will cut no figure whether one way or the other, and contract will be averaged when the cars shall begin to be delivered.

"It is understood that in making the obligation the obligation shall be for the entire cost price of one hundred cars, the time of delivery will be averaged.

"It is of course understood that these cars shall be subject to our inspection at the time of delivery. Shipping instructions to be given at the proper time.

Yours truly,

Big Muddy River Con. Coal Co.,

By Bennett H. Young, Pt.

Accepted

The Cinti. Equipment Co.,

P. B. Warner, Secy. & Tr."

The answers to the original and amended petitions resisted the relief asked by appellant upon the grounds, first; that neither by the above writing nor otherwise, was there a contract entered into by the parties. Second; that the writing referred to was but a tentative agreement for the sale of certain cars, in which certain features of the contract therein contemplated were left open for subsequent agreement by the parties, but were never agreed on because appellant by another draught of a contract submitted to appellee, changed the person of the vendor, the means of securing the deferred payments, and would have deprived the vendee of the right of choice between cars of similar kind proposed to be purchased; and that the changed or substituted draught of the contract thus submitted to appellee was never accepted by it; Third; that there was no breach of contract. Fourth; that appellant was not damaged by a breach of the alleged contract in the sum of $20,000 or any other sum. The affirmative matter of the answers

was traversed by reply. Subsequently appellant filed a second amended petition, claimed to be necessary to make the pleadings conform to the proof, wherein it was in substance alleged that appellee failed and refused to execute the draught of a car trust agreement, prepared by appellant and submitted to it, in compliance with the terms of the written agreement of October 12, 1907, for the insufficient reason that on account of the stringency of the money market and circumstances of its own making, it found it inconvenient and undesirable to perform the contract. The averments of this amended petition were controverted of record, thereby completing the issues.

After the taking of numerous depositions by the parties, the case was submitted and the circuit court, by the judgment rendered, held that the writing of October 12, 1907, was but a tentative agreement; that it had been abandoned by the appellant itself by a proposition offering another and essentially different contract to that proposed in the tentative written agreement; especially, in the matter of substituting another vendor of the coal cars for appellant, named as such therein, which substituted contract was never accepted by appellees; that the contract, not having been completed, was unenforceable; and, finally, that the petition be dismissed. Appellant's dissatisfaction with that judgment led to this appeal.

The negotiations resulting in the execution of the writing of October 12, 1907, seem to have been conducted by P. B. Warner on behalf of appellant, and Bennett H. Young on behalf of appellee; the former being appellant's secretary and treasurer and the latter appellee's president. These negotiations began with a letter from Gen. Young to Warner of August 8, 1907, looking to the purchase by appellee of appellant of 100 second hand wooden hopper bottom coal cars of 80,000 pounds capacity each. Coal cars of the character desired were owned, it appears, by three coal companies known to Warner; the Morrisdale Coal Co. owning 150 of them, numbered 3000 and upward; the Puritan Coal Co. owning 50, numbered 500 and upward; and the Baker Whitley Co. owning 100, numbered 8000 and upward. The coal companies mentioned were all located in Pennsylvania and on lines of the Pennsylvania Railroad Company.

Shortly before October 12, 1907, one Rhoads, an inspector, by direction of Gen. Young went to Altoona, Pennsylvania, and inspected such cars belonging to the three coal companies mentioned as were pointed out to him by an employe of appellant who accompanied him. Among those thus inspected were 17 cars, of numbers between 500 and 550, belonging to the Puritan Coal Company; 29, of numbers between 8000 and 8,100, belonging to the Baker Whitley Company; and 14, of numbers between 3,000 and 3,150, belonging to the Morrisdale Company. The purpose of the inspection by Rhoads was not to make a selection from among the cars inspected of such as appellee desired to purchase, but only to ascertain whether the cars were of the character desired by Gen. Young. Several days after this inspection, namely, on October 12, 1907. Gen. Young and Warner met in the office of the former at Louisville and entered into the writing of that date. There can be no doubt that at that time it was the understanding of Gen. Young and Warner that appellant was to be the vendor of the cars appellee proposed to purchase. The fact that the cars were to be obtained by appellant of the Puritan Coal Company or the Morrisdale Coal Company was also understood, but neither of these companies is mentioned in the writing then executed as the vendor of the cars. The language is: "That we (appellee) are to take from *you* (appellant) one hundred (100) cars out of the Puritan Coal Company, or the Morrisdale Company, which cars were inspected by our Mr. Rhoads. * * * We are to pay *you* for said cars the sum of seven hundred ($700.00) dollars each; delivered at Altoona, or approximately Altoona, and we are to pay *you* 25 per cent cash, and the balance in twelve monthly installments, beginning after the 1st of January, 1908."

It is equally evident that when this writing was signed, Warner exhibited to Young a sample of writing customarily used, as he claimed, in car trust sales which indicated the character of instrument evidencing the trust to be later prepared by appellant and submitted to Young in conformity to the following clause of the paper of October 12, 1907: "This agreement is merely tentative and the cars are to be placed with us (appellee) upon a trust, the ownership to remain in the trustees until final payment is made. These papers are to be in the usual and ordinary form, a copy of which will be submitted to

the Big Muddy River Consolidated Coal Company later on.''

It is apparent from the evidence that the subsequent writing furnished by appellant's agent, Warner, to appellee's president, Young, for his signature did not contain the contract as tentatively expressed in the previous writing of October 12, 1907, because it did not give the name of appellant as the vendor of the cars therein described, and did not conform to the character of the car trust required by the tentative agreement, but contained the name of the Morrisdale Coal Company as the lessor and ultimate vendor of the cars; and instead of providing for a sale of the cars to appellee through a trustee who was to hold the title to the property until paid for by appellee, the writing provided for the leasing of the cars to appellee, for payment by it of certain monthly installments by way of rent thereon, and, finally, for the sale of the cars and passing of the title to appellee after the payments made by it by way of rents should amount to as much as $700 per car. For its work in procuring the completion of the car contract between the Morrisdale Coal Company and appellee contained in the paper furnished for the acceptance of the latter and the signature of its president, appellant, by contract with the Morrisdale Coal Company, was to receive $95 of the $700 paid by appellee on each car. In thus presenting a paper containing a different contract to that provided for by the tentative agreement, appellant must be regarded as having abandoned the contract as contained in the tentative agreement and proposing another, some of the material terms of which were, as we have seen, substantially different.

That the last writing was drawn in the form presented to appellee in order to satisfy the Morrisdale Coal Company, and that it would not part with the cars upon any other terms than those expressed therein, does not alter the fact that the contract it contained substantially differed from the tentative agreement expressed in the writing of October 12, 1907, and this being so appellee was not bound to sign the substituted contract or bound by its terms unless it was willing to accept it and did accept it; therefore, the acceptance of the substituted contract by appellee was necessary in order to make its terms binding upon it. The testimony of both Young and Warner shows that they did not consider the deal for the

cars closed at the time the last writing was furnished to Young for his signature. In fact, according to the terms of the tentative written agreement of October 12, the deal could not have been closed without the signature of Young as appellee's president to the paper which it required appellant to subsequently draw and submit to him for that purpose, and if, when so drawn and submitted to Young, he did not accept or sign it, the contract was never completed.

Our meaning is well expressed in the following statement of the law found in 9 Cyc., 280:

"Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of minds while such agreement is incomplete. Thus where they intend that their verbal negotiation shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed. * * * An agreement to be finally settled must comprise all the terms which the parties intend to introduce. * * * Generally speaking, the circumstance that the parties did intend a subsequent agreement to be made is strong evidence that they did not intend the previous negotiations to amount to an agreement. * * * On the other hand an agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if executed."

In the instant case the tentative agreement expressly states that the contract was to be subsequently written in a form agreed on by the parties, to which appellee's president was to attach his signature, but when the paper as subsequently prepared by appellant was presented to its president for his signature, it contained terms or stipulations which had not been considered or agreed on by the parties at the time of entering into the previous tentative writing, and in addition brought into the transaction as the lessor and vendor of the cars desired to be purchased by appellee a new party.

In Eliason vs. Crenshaw, 4 Wheat, 228, it is said:

"It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made, any qualification or departure from those terms invalidates the offer, unless the same be agreed to

by the person who made it. Until the terms of the agreement have been assented to by both parties negotiation is open and imposes no obligation upon either.''

This statement of the law was quoted with approval and applied in N. Y. Life Ins. Co. v. Levy's Admr., 122 Ky., 457; and in Prov. Sav. L. A. Soc. vs. Elliott's Exr., 31 R., 552, in each of which a recovery upon an insurance policy was refused upon the ground that there was never an acceptance of the application by the insurance company or the delivery of the policy by it to the insured before the death of the insured, consequently that the contract of insurance attempted between the parties was never completed.

On this subject Parsons, in his work on Contracts, Vol. 1-445, thus states the rule:

''There is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense. * * * It becomes a contract only when the proposition is met by an acceptance which corresponds with it entirely and adequately.''

In Page on Contracts, Vol. 1, sections 45-46, it is said: ''Section 45. The acceptance must furthermore correspond to the offer at every point, leaving nothing open for future negotiations. * * *

''Section 46. An attempted acceptance which seeks to modify one or more terms of the offer is of no legal effect as an acceptance. It is really a rejection of the offer and a proposition in lieu of the original offer and must be accepted by the party making the original offer in order to constitute an original agreement.'' Hutchison vs. Blakeman, 3 Met., 80; Nat'l Bank v. Hall, 101 N. S., 42; Travis v. Niederland Life Ins. Co., 104 Fed. R., 486; Ins. Co. v. Rassle, 67 Mass., 336; Rogers v. Charter Oak Ins. Co., 41 Conn., 97.

Manifestly the principle announced by the foregoing authorities must apply where, as in this case, the vendor, after the execution of a tentative sales agreement which left open certain points for subsequent agreement, being dissatisfied with certain material features of the agreement, submits to the vendee a draught of a contract which changes the person of the vendor, the means of securing deferred payments, and deprives the vendee of the choice among articles of similar kind. It cannot be denied that this is in legal effect an abandonment of the original agreement and the proposition of a different

agreement, which requires an unqualified acceptance on the part of the vendee to constitute a binding contract. Robertson v. Tapley, 48 Mo. App., 239; Am. Woolen Co. v. Moskowitz, 140 N. Y., 522; Compania Bilbania v. Span. Am. L. & P. Co., 146 U. S., 483; Boisseau, Trustee v. Fuller, 96 Va., 45; Elmore Quillen & Co. v. Parrish Bros., 170 Ala., 499.

It appears that the instrument of writing containing the lease agreement sent to Gen. Young for his signature was lost or mislaid and is, therefore, not found in the record; and from his testimony that he diligently searched for it through all of his papers but had failed to find it, and that according to his best recollection he had turned it over to Theo. R. Troendle, then Secretary and Treasurer of appellee. Later a search was made for it among appellee's papers by Jepson, the successor of Gen. Young as president of the company, and Mr. Wehle, one of its counsel, but without success. The loss of this writing from the record is not material, however, as there is no difference of recollection between the parties as to its contents, its language and meaning being as set out in the opinion.

It remains to be determined whether there was an acceptance of this writing on the part of appellee through its president. It is admitted that it was never signed by that officer, but is insisted for appellant that his retention of the paper, together with the reason assigned by him for not signing it, constituted an acceptance thereof, binding upon appellee. The writing was mailed to Gen. Young from Cincinnati November 1, 1907. On November 13, Warner, acting for appellant, wrote Young urging him to sign the instrument. On November 19 Warner again wrote Young urging that he sign and return the paper. On December 3 Young wrote appellant, saying in substance: "This contract has not been signed because the financial conditions have so changed since the agreement was entered into that it is impossible for the company to finance the scheme along the lines that it was agreed it should be financed. * * * It seems to me that if the cars could be used and retained by the owners for the present as the coal traffic is good, that a reasonable delay in fulfilling the agreement would injure nobody and in the end would enable us all to carry out what we had agreed to do. In a reasonable time and when the financial flurry has abated so as to justify people going

on in business the company will be glad to execute the contract.''

We are of opinion that there was no acceptance by Gen. Young of the substituted contract contained in the paper sent him by appellant. Such acceptance is not shown by his silence from November 3, 1907, down to December 3 following, nor by his letter of the latter date. With respect to his silence for the time indicated, it may be said that it could not have constituted an acceptance in the absence of an agreement that such silence should have that effect. In Page on Contracts, section 42, it is said:

''Failure or omission to reject an offer is not equivalent to an acceptance. Even if the party making the offer prescribes that a failure to answer shall be regarded as an acceptance, such failure does not amount to an acceptance. The party to whom the offer is made may, however, have agreed that his silence shall be equivalent to an acceptance and this agreement may be understood from the conduct of the parties. In such case, retaining a letter applying for shares is an acceptance.''

It is not claimed by appellant that there was a previous agreement between the parties that silence should be regarded as an acceptance. An agreement that silence should be regarded as an acceptance might be implied from the writing of a letter, but the agreement will not be implied under circumstances such as attended the silence of Gen. Young. The case is one in which the intention to accept must have been positively expressed. We are also of opinion that the ground upon which Gen. Young's letter of December 3 based his refusal to sign the paper did not constitute an acceptance of the contract as expressed in the instrument. At that time there was a commercial panic prevailing throughout the country which crippled appellee in its operations and from which it does not appear to have recovered when Gen. Young resigned as its president something like a year later; and while this commercial panic was given as a reason by Gen. Young for refusing to sign the paper sent him, we are not to infer therefrom that other grounds might not have existed for his refusal to sign it. As said in Page on Contracts, section 44:

''The intention to accept must be expressed in positive terms. Thus a statement by the offeree that he would think over the matter; or that he would like to accept it; or a promise to take the matter up at a later

time; or that he would see what he could do and give notice later, are none of them equivalent to an acceptance." Marshall v. Eisen. Ins. Co., 28 N. Y. S., 62; Stagg v. Compton, 81 Ind., 171.

We think it clear from the letter of Warner to Gen. Young, written December 10, 1907, in answer to that of Gen. Young of December 3 that he did not consider the latter's silence or his letter of December 3 as an acceptance, for in his letter Warner said:

"I herewith enclose you a letter which I wrote to the Morrisdale Coal Company, with which I enclosed a copy of your letter of December 3, to me, which you gave me while in your office along with all other correspondence which we have had with you since I originally sold you the cars. He replied under date of the 7th. and I am enclosing herewith his original letter of which I wish you would make a copy and return it to me. *If this meets your approval, Colonel, suppose you execute these (duplicate) contracts and if they do not quite meet with your approval suppose you insert a date that will be satisfactory to you. We will then be able to cinch this trade so that you will be sure of getting the cars when you want them.*"

It is not reasonable to suppose that Warner would thus have requested Young to sign the paper with the right to make subsequent changes, if he had understood that the latter's letter of December 3 and his previous retention of the papers for a month constituted an acceptance of the contract as therein expressed. On the contrary, it shows that Warner then believed that matters were yet to be "cinched" between himself and Young by the subsequent offer of new terms which might be regarded by Young as more advantageous to appellee.

It is patent from the testimony of Gen. Young that he neither approved or disapproved the contract sent him by Warner; and that the insuperable difficulty caused by the existing financial disturbance prevented consideration at that time of the provisions of the paper. In his view the word "tentative" contained in the original paper was used in the sense that the general terms of the contract were agreed on as therein expressed, "but the details were to be arranged in the other paper to be executd;" that while he and Warner did not settle upon the particular form of agreement which should be used in the transaction, not a lease of the cars but a conditional

sale of them was contemplated by the tentative agreement, with trustees in it; that by the word "submit" as used in the tentative agreement was meant a submission of the subsequent paper for approval; and that by the expression "usual and ordinary form" of car trust agreement mentioned in the tentative agreement, was meant the form used in the car trade and not that contained in the paper subsequently sent Gen. Young.

The Massachusetts cases: Gerrish v. Norris, 9 Cush., 167; Carpenter v. Holcomb, 105 Mass., 280; Palmer v. Sawyer, 114 Mass., 1688; Freeland v. Ritz, 154 Mass., 257; cited by counsel for appellant in support of their contention that, because Gen. Young did not, within a reasonable time after the subsequent draught of the contract was furnished him, object to the material differences between it and the tentative agreement, appellee is estopped to reject the contract on account of these diffrences, do not fairly sustain the contention, but merely hold that where a *complete contract* has been entered into between the parties and in consummation of the same one party is to deliver to the other a deed or lease and the instrument contains changes from the previous contracts in *non-substantial* points, and the party to whom the instrument is tendered, instead of objecting to it on account of the changes, bases his refusal to perform the contract on other grounds; he will be estopped from relying on the changes as defects in the paper tendered. But the situation here presented is different. There had not been a completed contract before the paper by which the parties were to be bound was furnished appellee for the signature of its president, and the changes made by the paper tendered were in respect to substantial points.

We are also unable to see that the rule announced in Bell vs. Offutt, 10 Bush, 632, and Grainger & Co. v. Cornish Co., 116 S. W., 753, relied on by appellant, has any application to this case. That rule simply declares that where *all* the terms of the contract are agreed on and there is an agreement between the parties to subsequently put them into the form of a written contract, the failure to do so cannot deprive the agreement of its enforceable character. But the application of that rule must be denied here, because some of the material features of the contract were held in abeyance and left for future agreement and insertion in the subsequent paper, which was to contain all the terms of the contract as completed.

On the facts presented, we have reached the conclusion that there was never a completed contract between appellant and appellee, because there was never a meeting of the minds of the parties; and that the draught of the contract furnished appellee by appellant for the signature of its president, not only failed to conform to the previous tentative agreement of October 12, 1907, but contained material changes, repugnant. thereto, which were never accepted by appellee. As there was no completed contract, there could have been no violation of it by appellee or consequent damage sustained by appellant. This conclusion renders unnecessary a decision of the other questions presented by the record, viz.; as to the matter of damages and whether the right of action, if any had been shown, would be in appellant or the Morrisdale Coal Company.

Judgment affirmed, whole court sitting.