# Kentucky Portland Cement & Coal Company v. Steckel.

(Decided April 30, 1915.)

## Appeal from Rockcastle Circuit Court.

1. Exchange of Property—Agreement to Exchange Property Not Enforcible as a Contract If the Exchange Is Not In Fact Made—Nonsuit—When Authorized.—In an action to recover the possession of a pair of mules which the plaintiff claimed were swapped him by the defendant's agent for another pair of mules, as the plaintiff's testimony furnished the only evidence relied on to establish the trade and it merely showed an agreement between the parties to make an exchange of mules, without specifying the particular mules plaintiff was to receive in the exchange, and the exchange was never in fact made, the trial court, at the conclusion of the plaintiff's evidence, should have peremptorily instructed the jury to return a verdict in behalf of the defendant.

2. Contracts—What Necessary to Complete.—There is no contract unless the parties thereto assent, and they must assent to the same thing in the same sense. It becomes a contract only when the proposition is met by an acceptance which corresponds with it entirely and adequately. So, where there is a mere agreement to exchange property, it cannot be made binding as a contract if there is a failure of one of the parties to designate the property he is willing to exchange with the other party, or no acceptance by the latter of the property thus designated.

3. Damages—What Recoverable in Action of Claim and Delivery.—The only thing recoverable in an action of claim and delivery, beyond the property sued for, or its value if not to be had, is such damages as result to the plaintiff from the wrongful taking or detention of the property.

4. New Trial—Value of Property Sued For—Limited to Amount Claimed in Petition.—Where the petition fixes the value of the property sued for at $225.00, and plaintiff was awarded by the verdict of the jury and judgment of the court, $325.00 as such value, this error alone constituted a sufficient ground for setting aside the verdict and judgment and granting defendant a new trial. Section 181, Subsection 2, Civil Code, which requires that the affidavit for an order of delivery shall state the actual value of the property sued for as well as the amount of damages claimed for its detention, limits in such case the recovery for the value of the property to such a sum as will not exceed the amount claimed in the affidavit or petition; and this is so, although the value of the property was stated by the defendant's answer to be $325.00. Such admission could not enlarge the plaintiff's recovery beyond the amount fixed by and claimed in the petition.

C. C. WILLIAMS for appellant.

BETHURUM & LEWIS for appellee.

Opinion of the Court by Judge Settle—Reversing.

In this action, brought by appellee to recover the possession of a pair of mules, of which he claimed to be the owner and entitled to the possession, and to recover damages for their alleged illegal detention by the appellant, the jury returned a verdict for the return of the mules to appellee, awarding him $325.00 as their value, in case their return could not be had, and $75.00 by way of damages for their detention by appellant. From the judgment entered on that verdict the latter has appealed.

When the order of delivery was executed appellant, by giving the necessary bond, retained possession of the mules. Its answer, as amended, traversed the averments of the petition, and, in addition, alleged, in substance, that appellant's general superintendent, W. J. Dreisbach, from whom appellee claimed to have purchased or traded for the mules in controversy, was without authority to sell or trade them; that such sale or trade, if any was made, was without appellant's knowledge or consent; and that the alleged trade was effected by a fraudulent collusion between Driesbach and appellee, to cheat and defraud appellant.

The record furnishes several grounds compelling a reversal of the judgment. First: The amount allowed appellee by the verdict as the value of the mules sued for exceeds by $100.00 the value alleged in the petition, which, in this case, contains the affidavit for the order of delivery and was verified; the value therein alleged and sought to be recovered being $225.00, and that awarded by the verdict and judgment, $325.00. Section 181, Sub-section 2, Civil Code, requires that the affidavit for an order of delivery shall state the "actual value" of the property sued for, as well as the amount of damages claimed for its detention; and if the delivery of several articles of property be claimed, Section 182 requires that the "affidavit must state the value of each." Manifestly these provisions of the Code limit the re-recovery for the value of the property to such a sum as will not exceed the amount claimed in the affidavit or petition, and we so held in Anderson v. Heile & Sons, 23 R., 1115. Appellee cannot profit by the fact that the value of the mules was stated by the appellant's answer to be $325.00. This admission could not enlarge his re-

covery beyond the amount fixed by and claimed in the petition.

Second: The evidence fails to show appellee's title to the mules, or any right in him to the possession thereof. · It will be found from the testimony of appellee, contained in the bill of evidence, that he claimed to have obtained the title to the pair of mules in controversy by exchanging for them a small pair of mules owned by him, known as mining mules, and that this exchange was made with appellant's general superintendent, J. W. Dreisbach. It conclusively appears from the evidence as a whole that the mules appellee claimed to have exchanged for the pair in controversy were of little value. It is true that he had paid for one of the mules, purchased some months previously from Reynolds, $150.00, and for the other, purchased of Panel, $65.00, but the Reynolds mule had become a cripple from the fracture or dislocation of one of his "coffin" joints. There is some contrariety of evidence as to when the injury to this mule occurred, but we think the weight of it tends to show that it was a cripple at the time appellee claims to have made the trade with appellant's general superintendent, Dreisbach, and it conclusively shows that the injury rendered the mule worthless, or so nearly so that its value is less than $30.00. It also appears from the evidence that the other mule, known as the Panel mule, was and is practically worthless, resulting from its viciousness of temper and habit. Appellee admitted that this mule was unreliable as a worker in harness, but claimed that he was fairly safe and useful as a saddle animal, in which capacity it could have been of no use in appellant's mine. All the other witnesses acquainted with the mule, and they were numerous, testified that he could be made to work only at rare intervals; that upon being harnessed to a mine car or other vehicle it was his habit to kick until released, and then escape by running away; that when in these "tantrums" he would skin and wound his legs until they became permanently sore and enlarged. The value of this mule, according to the weight of the evidence, could not have been at the time of the alleged trade, and is not now, greater than $40.00.

On the other hand, it is admitted by appellee, and the evidence all shows, that the pair of mules for which appellee claims to have exchanged the Reynolds and

Panel mules, were, at the time of such alleged exchange, and are now, worth $325.00.

The facts evidencing the alleged exchange are furnished by the testimony of appellee and a letter written him by appellant's general superintendent, Dreisbach. Driesbach is an uncle of appellee, and the latter, at the time of the alleged exchange of the mules, was also in appellant's employ, his position being that of mine superintendent under Dreisbach, the general superintendent. According to appellee's testimony, the Reynolds and Panel mules, owned by him, had been hired by appellant and were being used by it in hauling outside the mine when the alleged exchange of mules was made; that upon being informed by Dreisbach the Reynolds and Panel mules were needed by appellant for use in the mine, he declined to allow them to be so used, unless appellant would insure or guarantee the safety of the mules; that Dreisbach thereupon told appellee the company would have to have the mules, and he then sent them to be used in the mine, because of a promise made at the time by Dreisbach that appellant would buy him a new pair of mules. This was about March 1, 1913, and on March 5, 1913, he received from Dreisbach the following letter, written from appellant's Louisville office:

"Louisville, Ky., March 5, 1913.

"Mr. M. A. Steckel, Supt.
        "The Kentucky Portland Cement & Coal Co.
            "Pine Hill, Ky.

"Dear Miles:

"Referring to our conversation in regard to the Company insuring the mules used in the mines, this means mules hired from outside parties. Will say that we cannot do this, as the Company has no mining mules. I will swap two of the Company's mules for the two mining mules that you own. I consider this a fair bargain. If you want to make the exchange, please do so.

"Very truly yours,
            "J. W. DREISBACH,
                "General Superintendent."

In connection with the introduction of the above letter, appellee was asked the following question:

"Q. 33. Now through the conversation you had with Mr. Dreisbach and correpondence, the deal of trading

the Sam Reynolds and Panel mules and the Hansel mules was made, and in that way you became the owner of these mules? A. Yes.''

It is apparent from the statements of appellee and the letter of Dreisbach that there was no contract for an exchange of the mules, and that the exchange was never consummated. At most, his testimony shows nothing more than an agreement on his part to let appellant have his mules for use in the mine, and a promise on the part of its general superintendent, Dreisbach, that if he would do so appellant would buy and furnish him another pair of mules in exchange for his mules. Although appellant then owned the Hansel mules, there was no agreement on the part of Dreisbach that appellee should receive them in exchange for his. On the contrary, the mules he was to get in exchange for his were thereafter to be purchased by appellant for that purpose, and as this promise was never complied with, appellee did not part with his title to the Reynolds and Panel mules. It is true the letter subsequently written appellee by Dreisbach contained an offer to swap two of appellant's mules for his mules, and, if the letter be construed as giving appellee the right, in the event he desired to make the exchange, to take two of appellant's mules, it did not designate the Hansel mules or any others as the pair to be so taken by appellee. Indeed, in view of the fact that the value of the Hansel mules was more than double that of appellee's mules, it would do violence to both the intelligence and integrity of Dreisbach to indulge the presumption that he intended by what was said in the letter to give appellee permission to take the Hansel mules in exchange for his.

The letter conclusively shows that there was no contract previously made by the writer with appellee for the exchange of mules, and, also, that no such contract was made in or by the letter, as it contained a mere offer of the writer to make an exchange of mules, if desired by appellee, and left open the selection of the mules owned by appellant that were to be exchanged for the mules of appellee. Moreover, the evidence fails to show any acceptance by appellee of the offer contained in the letter, or communication of such acceptance to appellant or its agent, Dreisbach. Our meaning is well expressed in the following statement of the law found in 9 Cyc., pages 271-2:

"Where the offerer, instead of offering to do something if the other party will perform and leaving the latter free to perform or not as he pleases, requires a reciprocal promise from the offeree, the latter must communicate his acceptance of the offer and thereby bind himself by an engagement from which he cannot recede or there will be no agreement; even a compliance with the terms of the offer will not suffice. Communication of acceptance in such a case is not only necessary to bind the offerer, but it is also necessary to bind the offeree, and the offerer cannot make silence on the offeree's part an acceptance by a stipulation to that effect in the offer. Communication of acceptance to a third person, not the offerer's agent, is of no more effect than noting it in one's memorandum book, which is no more than though it existed solely in one's mind." Cin. Equipment Co. v. Big Muddy River, etc. Co., 158 Ky., 247; New York Life Ins. Co. v. Levy's Admr., 122 Ky., 457; Providence Saving L. A. Society v. Elliott's Exr., 31 R. 252; Parsons on Contracts, Vol. 1, 445; Page on Contracts, Vol. 1, Sections 45-46.

It is further apparent from the evidence that there was never a delivery by either party to the other of the possession of the mules appellee claims were exchanged.

From whatever viewpoint it is considered, the evidence relied on by appellee to establish the alleged contract, does not do so. It merely shows that there were negotiations between the parties looking to a trade, which did not result in the actual making of a contract. For this reason the trial court should, as requested by appellant, have peremptorily instructed the jury, at the conclusion of appellee's evidence, to find for appellant.

Even if the case should have gone to the jury upon the theory entertained by the circuit court, the instructions given improperly assumed that there was a contract made by appellee and Dreisbach, appellant's general superintendent, for the exchange of the mules, instead of submitting to the jury the question whether there was such a contract made, and, if so, whether the mules of appellant to be exchanged for those of appellee were the Hansel mules.

Moreover, the instruction as to the measure of damages improperly authorized the jury to find for plaintiff, in addition to the damages, if any, he sustained in being illegally deprived by appellant of the possession and

use of the mules, such reasonable expenses, if any, including a reasonable attorney's fee, and the value of such loss of time, if any, as he may have incurred in the effort to regain possession of the mules in controversy. As a matter of law, the only thing recoverable beyond the property itself, or its value if not to be had, is such damages as result to the plaintiff from the wrongful taking or detention of the property sued for. Damages for loss of time, expenses or an attorney's fee incurred in an effort to regain possession of the property, even if pleaded, which was not done in this case, are not recoverable in such action. Civil Code, Section 388; Galloway v. Bethume, 6 Bush, 113; Ky. Land & Immigration Co. v. Crabtree, 118 Ky., 395.

Because of the errors indicated, and each of them, the judgment is reversed and cause remanded to the circuit court for a new trial consistent with the opinion.