### Murrell v. American Railway Express Company.

(Decided May 20, 1924.)

#### Appeal from McCracken Circuit Court.

1. **Landlord and Tenant—Necessity for Signature of Lessee to Lease.** —Ordinarily a lease need not be signed by lessee, but where parties contemplate that contract is not to become binding until signed by both signature must be affixed to it.

2. Contracts—One Not Bound by Signature Until Delivered.—One is not bound by a contract which he signs unless he delivers it.

3. Landlord and Tenant—Lease Does Not Take Effect Until Delivered.—A lease, though signed by both parties, does not take effect until it has been delivered.

4. Landlord and Tenant—One Making Proposition to Lease Property May Withdraw Before Acceptance.—One who makes a proposition to lease his property may withdraw at any time before acceptance.

5. Corporations—Lease to be Binding Must be Signed by Officers of Express Company as Provided Therein.—Where express company specifically provides in lease contract that it will not be bound except on authority of superintendent or official of equal dignity, and parties contemplate signature of both lessor and express company, contract signed by lessor did not bind express company, and did not prevent withdrawal by lessor unless it was signed by superintendent or proper official, and actually delivered into hands of lessor, and it was insufficient that contract was signed and in hands of local agent of express company.

BRADSHAW & MacDONALD for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Reversing.

For several years past the appellant, Mrs. Cornelia R. Murrell, has been the owner of a certain business house in the city of Paducah which she has leased by written contract to appellee, American Railway Express Company, as an office and place of business, for a year at a time, with the privilege of one renewal, reserving a rental of $125.00 per month. One of these written contracts is dated February 24, 1922, and provides:

"To have and to hold the above described premises with the appurtenances unto the company, its successors and assigns for the term of one (1) year from 12 o'clock noon on the 6th day of March, 1922, to 12 o'clock noon on the 6th day of March, 1923."

In December, 1922, and before the lease mentioned above had expired, the express company approached the agents of the owner and inquired if it would be permitted to renew its lease, whereupon the agents informed the representatives of the express company that they would inquire of the owner and find out if such a lease could be

obtained. A few days later the agents of Mrs. Murrell notified the representatives of the express company that it could have a renewal of the lease for one year with the privilege of a second year upon the same terms as before, the lease to begin March 6, 1923. On December 29, 1922, the agent of the express company wrote the agent of the owner of the property as follows:

"Referring to our conversation in your office a few days ago relative to the renewal of the lease on our Paducah office, at which time I advised you that we wished to do some interior decorating, and as this work hinges on renewal of lease I should like to have some expression from you in regard to same.

"I believe you agreed to write me after an interview with Mr. Bradshaw, but as yet I have not received your letter."

On the 15th of January following the agents of the owner answered by letter as follows:

"Referring to our conversation and to your letter of December 29th relative to the renewal of the lease on your office at 420 Broadway, we are willing to give you a lease for one year with the privilege of one renewal for the same length of time, on the same terms as those now existing under your present lease.

"If this is satisfactory, please have your home office forward their lease for our signature."

On or about January 23, 1923, the express company sent to the agents of Mrs. Murrell the usual printed contract properly filled in for a renewal of the lease. This contract was executed by the agents of Mrs. Murrell and returned to the express company some time before the 29th of January. Nothing further was heard from the express company by the lessor's agents for something more than two weeks. The contract was to be signed by the express company and a copy furnished to the agents of the owner. After waiting for a return of the contract from January 29th until February 15th and not hearing anything Mrs. Murrell decided she would withdraw her proposition to lease the premises to the express company on the terms set forth in the contract and immediately advised the express company to this effect by letter. Up to this time the express company had not indicated its

acceptance of the contract. It was then holding under the old contract, which extended from March 6, 1922, to March 6, 1923. When the express company received the letter from the owner notifying it that the offer to lease the property for one year had been withdrawn it immediately sent a copy of the contract properly signed to the office of the agents of the owner. This was refused. It was later sent by mail and again refused. The express company was given the privilege of renting the premises from month to month at the price of $125.00, but this proposition it declined to accept and insisted it was entitled to hold for another year under the proposed contract effective from and after March 6, 1923. Upon these facts the learned judge of the McCracken circuit court, to whom both law and facts were submitted, found the defendant express company not guilty of the forcible detainer charged in the writ and entered judgment in accordance with the finding, and this appeal seeks a reversal of that judgment.

The express company sought a renewal of the lease. Mrs. Murrell's agents, after consulting with her, advised the express company it might have a lease for another year from March 6, 1923, at the price named, with the privilege of one renewal, and directed the express company, if the terms of the proposition were acceptable, to forward a contract for the signature of Mrs. Murrell. This contract came and was signed and returned. To it was attached the printed signature of the "American Express Company, by ........................" (with a blank line), and under the line the words "General Manager." No name was written upon the line. The contract had not been executed by the express company and the express company was not bound by the contract. The old contract as well as the one now in dispute contained a clause No 8 reading:

"It is understood and agreed between the parties hereto that this lease cannot be renewed, extended, altered or modified as to its terms or conditions by any agent or employe of the American Railway Express Company except upon the written authority of an officer of the company of the grade of superintendent or higher."

There was some evidence tending to show that the express company did withhold its signature to the lease and the delivery of the contract because of pending nego-

tiations for dissolution of the American Express Company into its several component companies out of which it was organized as a war agency some years before, and that in such emergency the company did not want to have on hands an office building which it did not need and the delivery of the contract was held up by it, awaiting the outcome of such negotiations.

Ordinarily a lease contract, such as the one under consideration, need not be signed by the lessee, but if he accepts it he is bound by it; but where the parties contemplated that the contract is not to become binding upon either until signed by both, the signature of the lessee must be affixed to it before it is binding. Moreover one is not bound by a contract which he signs unless he delivers it. Elliott on Contracts, in treating of this subject, says: "The technical requirements for the execution of an instrument includes a delivery in addition to signing. So in strictness, it is true that a lease though signed by both parties, does not take effect until it has been delivered." Elliott on Contracts, 5th edition.

It is the contention of appellee that the contract was signed and in the hands of its local agent at Paducah, ready for delivery at the time it received notice from Mrs. Murrell's agents that her proposition for renewal was withdrawn, and the contract being signed, the appellee was bound, which also bound the appellant who had theretofore signed. We cannot accept this statement as a sound principle of law. The express company specifically provided in its printed contract that it would not be bound except upon the authority of the superintendent or an official of equal dignity, and the parties contemplated the signature of both to the contract. The express company was to be bound only by the contract when signed both by the lessor and lessee and delivered in duplicate. As a general rule it may be said that one who makes a proposition to lease his property may withdraw the proposition at any time before its acceptance by the proposed lessee, and it may be said that one who takes a contract to execute it but declares he will not be bound by the contract until it is executed and delivered, cannot complain that the proposition to make the contract is withdrawn by the other party before he accepts it by signing the proposed contract and delivering the original or a copy to the other party. Failing to accept the contract proposed by the agents of Mrs. Murrell, according to its terms, by signing it and returning a copy thereof so

signed to the agents before the proposition was withdrawn by her, through her agents, the express company forfeited its right to claim the leasehold for the year beginning March 6, 1923, and the trial court erred to the prejudice of appellant in holding otherwise.

Judgment reversed for proceedings consistent herewith.

Whole court sitting.

Judge Thomas dissenting.

### DISSENTING OPINION BY JUDGE THOMAS.

The amount involved is comparatively small, but the principle of law announced by the court in its opinion is so far-reaching and so at variance with what I conceive to be the settled law with reference to the execution of contracts, including of course leases, that I feel impelled to register my dissent and to briefly express my reasons therefor.

Before entering into a discussion of the merits I wish to point out some mistakes of fact in the opinion, but which, however, in the main, with the exceptions noted, states the true facts as contained in the record. In the first pace, the opinion says that "Up to this time the express company had not indicated its acceptance of the contract," which time was February 15, 1923, the date that the agents of appellant notified the express company in writing that it would withdraw the proposal to rent the building for the ensuing year beginning March 6, thereafter. I think that, in the light of the proven facts, the statement is incorrect, since at that time the contract not only had been prepared by the express company prior to January 23, 1923, but also, at that time it, together with a copy thereof, had been signed by the proper officer of the company and both the executed original and the copy had been sent to and received by the local office of defendant and both had been in that office since not later than February 14, the day before the withdrawing letter of appellant's agents was written. Secondly, the opinion says: "The contract was to be signed by the express company *and a copy furnished to the agents of the owner,*" when nowhere in the record, either expressly or by implication, was there proven or otherwise shown any agreement or understanding by either of the parties that the lease contract

should be executed *in duplicate* and a copy of it *delivered* to plaintiff or her agents, unless that fact could be inferred or surmised from the further one that the express company actually did prepare, not only two, but three copies, and I do not think that the court would be authorized to conclude therefrom the additional fact that it had been previously agreed between the parties to do so in the absence of some testimony supporting that inference. Again, the opinion says: ''The express company was to be bound only by the contract when signed by the lessor and the lessee and *delivered in duplicate*,'' which it but a repetition of the second mistake above referred to.

Another statement in the opinion to which I cannot subscribe is the reference therein to there being ''some evidence to show that the express company did withhold its signature to the lease and the delivery of the contract because of pending negotiations for dissolution of the American Express Company into its several component companies out of which it was organized as a war agency some years before,'' since the offered evidence on that subject was a witness who was only a messenger boy in the local office of the defendant and who, in some casual conversation, referred to the subject matter of the quotation, but which testimony the court excluded for the manifest reason that it did not emanate from any binding or authoritative source.

Neither do I agree with the opinion when it says: ''Ordinarily a lease contract, such as the one under consideration, need not be signed by the lessee, but if he accepts it he is bound by it.'' The law in this jurisdiction is that a lease contract ''such as the one under consideration,'' *i. e.*, one for a lease of real estate to commence in the future and to continue for as much as a year, must be signed by both lessor and lessee in order to comply with subsection 7 of section 470 of our statutes relating to agreements not to be performed within one year from the making thereof. Greenwood v. Strother, 91 Ky. 482; Bones v. Coe, 153 Ky. 233, 51 L. R. A. (N. S.) 907; 20 Cyc. 198, and 25 R. C. L. 473, paragraph 53. Many cases from other courts as well as others from this one are found in the notes to the texts. It is true that in some jurisdictions, as is pointed out in the cited texts, the lessee is not required to sign a lease for real estate, al-

though it is to commence in the future and extend for more than a year, since it is held therein that contracts for the leasing of real estate are exclusively covered by the other requirement of the statute relating to the selling or leasing of real estate beyond stipulated terms, but this court, together with many others, do not adopt that view and hold as above indicated.

The opinion furthermore says: "Moreover, one is not bound by a contract which he signs unless he delivers it," and also, "It is true that a lease, though signed by both parties, does not take effect until it has been delivered." I agree with those statements, but do not acknowledge their application to the facts of the case. Wheresoever there was a contemplated delivery to one of the parties to whom the negotiations specify shall be entitled to the custody of the contract as well as that the delivery to such person shall be made before the contract is complete, the general statements last referred to are correct, but where there is no such understanding, as a result of prior negotiations, one of the parties to the contract (not required to be executed in duplicate) has as much right to its control and possession as the other, with the privilege in the other or others to inspect it whenever desired. With these preliminary observations, I will now proceed to give my views of the law regarding the facts as they appear in the record.

The verbal negotiations with reference to the execution of the involved contract began some time in December, 1922, and on the 29th of that month defendant addressed a letter to the plaintiff's agents calling their attention to the prior conversation for "some expression from you in regard to same." That letter was not answered by the agents until the 15th of January, 1923, and in the answer they agreed to renew the lease upon the same terms as the one then in existence and also contained in other prior ones. In that letter the agents also said: "If this is satisfactory, please have your home office forward their lease for our signature." It will be observed that they regarded the contemplated lease as "their," or defendant's, lease and did not request the forwarding of any *duplicate* of the lease either for their signature or for any other purpose. Pursuant to that letter, as the record discloses without contradiction, the lease was prepared at the home office of the defendant in the city of St. Louis and forwarded to the local office in

Paducah, Kentucky, but in doing so, and no doubt for the convenience of the lessor, it sent an original and two copies and they were carried to the office of plaintiff's agents and were signed by them; though neither the originals nor any of the copies were signed at that time by any authorized agent of the express company. After they were so signed by plaintiff's agents they were then returned to the St. Louis office and were there signed by the proper officer of the company and returned to the local office at Paducah, Kentucky, fully and completely executed and arrived there, according to the evidence, not later than February 14, 1923.

It is my conclusion that, inasmuch as there was no agreement or intimation appearing in any part of the record that the contract should be executed in duplicate, all the requirements were met when a single copy copy had been fully executed by both parties and was in possession of one of them who had as much right to its possession as the other one, in the absence of some agreement or understanding to the contrary, none of which, I repeat, was true in this case. We know, as a matter of current history, that more frequently than otherwise there is executed but a single copy of written contracts, although they are required in law to be signed by all the parties thereto. Clearly, in such cases, both parties cannot at the same time have possession of the single contract, and it necessarily follows that unless one of them, pursuant to an understanding between them all, has the exclusive right to the possession of that copy it is competent for either of them to retain it, subject to the right of the other or others to inspect it when desired. If that was not the rule, then I would ask, when would the parties to a written contract, in cases where no duplicates were provided, ever get through delivering it backwards and forwards to each other? Applying the query to the facts of this case, let it be supposed that the express company had delivered the contract after it was executed by it into the hands of the agent of the plaintiff, who, under the record, had no more right to it than did the company after it was fully executed, then, under the rule contended for, it would not be binding on the latter until it was delivered back to it by plaintiff's agents for its approval of their acceptance and the process of delivering and redelivering for approval of acceptances or acceptances of approvals would continue *ad infinitum,.*

which illustrates to my mind the fallacy of the court's opinion and which I think it was led into adopting from a misconception of the facts in the record.

Another feature of the case is, that under an avowal found in the record, it was shown that in all prior contracts for successive annual rentals between the same parties the express company had always been given up to the time of the expiration of its then current lease within which to sign and execute the succeeding one. That method of dealing between the parties, unless it was withdrawn, was sufficient to my mind to induce the belief on the part of the express company that it had that much time within which to sign and deliver the contract to plaintiff's agents, even if the facts proved any such contemplation, and which time did not expire until March 6, following the alleged withdrawal made on February 15, 1923.

My conclusions, therefore, are: (1), That there is no testimony contained in the record to prove that it was ever contemplated by the parties that there should be any more than one copy of the contract executed; (2), that in the absence of some agreement or understanding that each party should be furnished with a fully executed copy of the contract, either one of them had the right to its custody and it became binding on all of them when it was duly executed by the last one and was retained by him in his possession; (3), that when the agents of the plaintiff signed the contract and returned it to defendant it became binding on both parties when the latter signed it, and (4), that even if it had been intended or contemplated that the contract, after being executed by defendant, or a copy of it, should be delivered to plaintiff's agent, then under the customary method of dealing between the parties, as disclosed by the record, defendant should be allowed the full time up to the expiration of the current contract to make that delivery and, consequently, the purported withdrawal of the proposed lease in the letter of February 15th was efficacious for no purpose whatever.

The opinion holding to the contrary is curious law to me and for which I find neither sustaining opinions nor text authority, and I, therefore, most respectfully dissent.