## New Headley Tobacco Warehouse Co. v. Gentry's Ex'r et al.

June 25, 1948.

858

Stoll, Townsend, Park, Mohney & Davis for appellant.

King Swope for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The question at issue is whether a lessee lost its right to an extension of a lease.

On September 1, 1932, P. T. Gentry executed a lease to New Headley Tobacco Warehouse Company of property in Lexington for a term of 21 years and 6 months at an annual rental of $1,200 and payment of taxes. The contract contained no provision for extension or renewal. Nearly ten years later, on March 24, 1942, Gentry addressed the following letter to the Company:

"In the event you build within the next five years (from March 1st, 1942) an addition to your warehouse at a cost of not less than $25,000.00 on the property you have under lease from me, I agree,

"First, to extend your present lease so you will have a total term of twenty-two years (22 years) from March 1st of the year the addition is built.

"Second, the extended term of lease shall carry a net rental to me of Sixteen Hundred Dollars ($1,600.00) per annum instead of the present net rental of Twelve Hundred Dollars per annum.

"Third, in all other respects the terms and conditions of the extended lease shall be the same as the present lease."

The lessee had not made any response or started construction of the building before Gentry died on September 29, 1945. It was not until April 16, 1946, more than four years after the offer to extend the lease had been made, and nearly seven months after Gentry's death, that the lessee communicated any acceptance of the offer. On that day the Warehouse Company addressed a letter to Gentry's executor advising it that the company accepted the offer of March 24, 1942. A confirmatory letter was written the executor on May 21, 1946, reciting that the company had made due application to the federal war bureau, known as the Civilian Production Administration, for a permit to acquire material and erect the building contemplated by the offer, but it had been denied. The date of the application was not given, but it is later shown to have been April 17, 1946, the day after the first letter was written the executor. The company later offered to deposit $25,000 in escrow to guarantee construction of the building in accordance with the terms of the offer to extend the lease, and it later made a tender of the sum. This and other efforts to obtain recognition of a right were futile.

This suit seeks a judicial declaration of the lessee's right to the extension of the lease. The judgment was adverse to the lessee.

The arguments cover several interesting points, but it seems to us the question may be decided upon common principles of the law of contracts.

We have, first, a simple offer without consideration to make a bilateral contract. Ordinarily an option of extension or renewal of a lease given for a good consideration runs with the land and is not terminated by

the death of the offeror or optioner but is binding on his successors. Graham v. Rice, 203 Ky. 614, 262 S. W. 968; 51 C. J. S., Landlord and Tenant, sec. 58b. But an option for a lease, like that of a sale, for which there is no consideration, being unilateral and voluntary and imposing no legal duty on either party, is subject to withdrawal or revocation by the optioner before acceptance or, perhaps in some instances, before the other party has done something in reliance upon the offer which works to his detriment. Murphy Thompson & Co. v. Reid, 125 Ky. 585, 101 S. W. 964, 10 L. R. A., N. S., 195, 128 Am. St. Rep. 259; Walton's Ex'r v. Franks, 191 Ky. 32, 228 S. W. 1025; Murrell v. American Ry. Express Co., 207 Ky. 322, 269 S. W. 293; Globe Brewing Co. v. Simon, 132 Ill. App. 198; 51 C. J. S., Landlord and Tenant, secs. 55, 56c, 186; 12 Am. Jur., Contracts, secs. 31, 32, 37; Restatement of the Law of Contracts, sec. 41. The form of the proposal in the instant case did not purport to be a grant upon consideration of an option to extend the lease. It was a mere voluntary offer, submitted without consideration, and under no contractual duty. It imposed no obligation on either party and could, therefore, be withdrawn at any time before acceptance. That could have been done by a definite word of assent or reciprocal promise, communicated to the offeror, or by performance of the condition precedent, thereby effecting a binding bilateral contract and holding the option open until it expired by its terms. 12 Am. Jur., Contracts, secs. 27, 37, 42; 51 C. J. S., Landlord and Tenant, sec. 57; Kentucky Portland Cement & Coal Co. v. Steckel, 164 Ky. 420, 175 S. W. 663. Silence certainly did not supply the part indispensable to the completed contract. Cincinnati Equipment Co. v. Big Muddy River Consol. Coal Co., 158 Ky. 247, 164 S. W. 794; Ingram v. Lane, 205 Ky. 57, 265 S. W. 434; Rounds v. Owensboro Ferry Co., 253 Ky. 301, 69 S. W. 2d 350. Nor did the fact of mere possession or right under the present lease give rise to any equity preventing the lapse of the offer, as the appellant submits. Rounds v. Owensboro Ferry Co., supra.

The offer having been subject to withdrawal or revocation by the lessor personally any time before he died, the question is as to the effect of his death upon

the right of the optionee, the lessee, to accept it thereafter before the end of the five year period, as it undertook to do.

In the making of a contract there must be two minds, at least, concurring at the moment of its completion. But this can not occur if there be but one of the contracting parties in existence. Hence, the death of a party who had the right of revocation or withdrawal of an offer to contract renders the completion impossible and terminates the negotiations or proceedings at the very point where they were when he died. So, an acceptance by the optionee or the other party subsequent to that event is ineffectual to close the bargain. Therefore, the death of a party while a contract is being made, even though only a single act remains to be done, renders the completion of the contract impossible. 12 Am. Jur., Contracts, secs. 35, 50; 17 C. J. S., Contracts, sec. 51c; Cf. Aitken v. Lang's Adm'r, 106 Ky. 652, 51 S. W. 154, 90 Am. St. Rep. 263. The question has been set at rest. Its pertinence excuses the relative length of the following quotation from Chain v. Wilhelm, 4 Cir., 84 F. 2d 138, 140:

"The effect of death upon a revocable offer is thus stated in Restatement of Contracts, sec. 48: 'A revocable offer is terminated by the offeror's death or such insanity as deprives him of legal capacity to enter into the proposed contract.' See, also, section 35. This rule has been criticized on the ground that under the modern view of the formation of contracts, it is not the actual meeting of the minds of the contracting parties that is the determining factor, but rather the apparent state of mind of the parties embodied in an expression of mutual consent; so that the acceptance by an offeree of an offer, which is apparently still open, should result in an enforceable contract notwithstanding the prior death of the offeror unknown to the offeree. On the other hand, it has been forcibly suggested that ordinarily the condition is implied in an offer that the offeror will survive to supervise the performance if his offer is accepted, and therefore an acceptance after death is ineffective even though the acceptor be ignorant of the offeror's death. See the discussion by Herman Oliphant in 18 Mich. Law Review, 201; James Lewis Parks, 19 Mich. Law Review, 152, 23 Mich. Law

Review, 475, 29 Univ. of Mo. Bulletin (Law Series 40) 5; Merton L. Ferson in 10 Minn. Law Review, 373; Selected Readings on the Law of Contracts, pp. 251, 260, 266, 275; Williston on Contracts (Rev. Ed.) sec. 62. These conflicting views, however, were given consideration in the preparation of the Restatement, and the rule announced was adopted as representing the weight of authority and professional opinion. See Proceedings of the American Law Institute, vol. 3, sec. 35, pp. 196 to 202.''

We are of opinion, therefore, the right of the appellant to accept the offer to extend its lease terminated with the death of the lessor. The circuit court so adjudged.

Judgment affirmed.