## CHARLES M. LININGTON

*v.*

## GEORGE H. STRONG *et al.*

*Filed at Ottawa September 27, 1884.*

1. RES JUDICATA—*judgment of Appellate Court reversing and remanding.* A decision or holding by the Appellate Court in reversing a judgment and remanding the cause, not being a final judgment, from which either party may appeal, can not be regarded as *res judicata* on a second appeal. One party can not be concluded by the judgment and the other not.

2. FRAUD—*false representations.* At law an intent to deceive must exist to constitute actual fraud. Representations, though untrue, if not made with a knowledge of their falsity, can not be said to constitute fraud, when the contracting parties occupy no fiduciary relation or position of confidence or trust toward each other.

3. SAME—*negligence in signing a contract without reading it.* In an action upon a written contract, which the defendant sought to avoid on the ground of an alleged fraudulent statement that it was a copy of an original draft except in a matter which did not concern him, the court, at the instance of the plaintiff, instructed the jury that a party executing a written contract should exercise reasonable care and prudence to learn its nature and contents before signing it, by reading the same, if capable of reading, and that he would not be excused for his want of care and prudence in signing without so reading the same, unless induced to do so by *willfully* false statements of the party procuring his signature: *Held*, that the use of the word "willfully," in the connection it was employed, did not render the instruction erroneous.

4. What is negligence in signing a contract without reading the same, is not a question of law, but one of fact for the jury, to be judged of from the peculiar facts and circumstances of each case. In such a case it is not proper to select certain of the facts, and tell the jury in an instruction that they afford no evidence of negligence or a want of proper and reasonable care.

5. CONTRACT—*royalty on a specified amount of product—evidence as to a less amount.* Where the contract sued on provided that the defendant should pay the plaintiff $1.44 per gross on at least 2500 dozen of pincers each year which the defendant was to manufacture and sell, whether he made and sold that many or not, it was *held*, in a suit on the contract, that evidence on the part of the defendant that he had made only 9135 pincers, and that he ceased to manufacture them after a certain time, was irrelevant, as he was bound to pay for the 2500 dozen at all events, and that was all for which a recovery was sought.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of Cook
county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

This was an action of assumpsit, brought by George H.
Strong and John Young, against Charles M. Linington, to
recover the second and third years' royalty, under a contract
dated April 1, 1876. The declaration contained three special
and the common counts. The first special count avers the
making of the written contract, by which the plaintiffs guar-
anteed to the defendant, for the period of five years from the
date thereof, the exclusive right to make and sell certain im-
proved pincers, mentioned in letters patent from the United
States to said Strong, in consideration for which the defend-
ant was to pay the plaintiffs a royalty of $1.44 for each gross
of said pincers made and sold by him during that time, pay-
ment to be made quarterly. The contract, which was set
out *in hæc verba*, contained this clause: "And said party
of the second part hereby agrees to keep an accurate book
account of the number of said pincers made and sold by him,
and render a true statement therefrom to the first party at
the end of each quarter, such statement of account to be
verified by affidavit by the party of the second part; and also
agrees to pay the royalty on at least 2500 dozen of said
pincers each year, and in default thereof this contract may,
at the option of said party of the first part, be declared null
and void." It further provided that one-half of the royalty
on the 2500 dozen should be paid to each of the parties of
the first part, and all in excess of that should be paid, sixty
per cent to Strong, and forty per cent to Young. The count
concluded by alleging that on April 1, 1880, there became
due from the defendant to plaintiffs, $1000, under the terms
of said contract. The second count states that plaintiffs had
granted the defendant the privilege of making and selling
said invention; that he had agreed to pay them a royalty of

$1.44 on each gross made and sold, and that he had made and sold to the amount of $100,000, and owed plaintiffs therefor. $1000. The third count alleges that on April 1, 1876, plaintiffs had granted defendant the said exclusive right, etc., for five years, and that in consideration thereof he had agreed to pay them each year a royalty on 30,000, at $1.44 per gross, and that by virtue of such agreement he owed them $1000 on April 1, 1880.

During the trial the defendant offered to prove that he had only made 9135 pincers, and to rebut any inference of a ratification of the contract he offered to show when he quit making such pincers, which, on objection, the court refused to admit, and the defendant excepted.

There was evidence that one of the plaintiffs took the draft of the contract to add thereto what share of the payments each was to have, as between the plaintiffs, and to have three copies thereof prepared for execution, and that such plaintiff told the defendant that the copies produced were copies of the original, except as to such addition, and that defendant thereupon signed such copies without reading the same through. From the original draft introduced in evidence it appeared that the contract, as executed, was not a copy thereof, as stated. The plaintiffs denied that any such representations were made to induce the defendant to sign the contract.

On behalf of the plaintiffs the court instructed the jury as follows:

"The court instructs the jury that the law requires of every person the exercise of reasonable prudence and caution in the affairs of life, and the law requires that before relieving a party from a contract on the ground of fraud in obtaining its execution, it should appear, from the evidence, that on entering into such contract he exercised reasonable care and prudence to learn its nature and contents before he signed

it; and the jury are further instructed that if they find, from the evidence, that the defendant could read at the time he signed the contract sued on, then it was the duty of the defendant to read such contract for himself before he signed it, unless the jury believe, from the evidence, that he was induced not to do so, without the want of reasonable prudence and caution on his part, by *willfully* false statements of the plaintiffs, or one of them, that it was a true copy of the draft made by the defendant's attorney, except as to the division of a portion of the royalty; and if the jury find, from the evidence, that the defendant was able and had full opportunity to read such written contract before he signed, and was not induced to forego reading it by willfully false statements of the plaintiffs, or either of them, or that defendant, under all the facts and circumstances shown by the evidence, did not exercise reasonable prudence and caution in not reading such written contract for himself before he signed it, then the court instructs the jury that the defendant can not now be permitted to say that he did not know what was contained in said contract when he signed it, and the jury should find that, when made, said contract became binding on the defendant."

—To the giving of which instruction the defendant excepted, and asked the court to instruct the jury as follows, without the words in brackets:

"1. The jury are instructed, that as between the parties fraud vitiates all contracts; and if the jury believe, from the evidence, that the defendant and plaintiffs made an agreement in regard to the matters in issue; that after the terms of said agreement were settled defendant caused a draft of said agreement to be made and submitted to plaintiffs, and they approved it, but asked to add a clause concerning a division of payments between themselves; that defendant consented, and plaintiffs took the draft away, agreeing to

copy it with the addition above named only, and returned with papers which they represented to defendant were such copies, with that addition only; that defendant [in good faith relied upon said representations, and] was deceived by such representations, and thereby induced to and did sign said papers without reading them, [and was not himself guilty of the want of reasonable prudence and caution in not reading such papers;] and if the jury further believe, from the evidence, that such representations were false, and that plaintiffs had put into such alleged copies conditions not in the said draft, and not known or consented to by the defendant, and that the contract sued on [in this case] is one of the papers to which the defendant's signature was so obtained, then the jury should find for the defendant.

"2. The court further instructs the jury that the provision in the contract sued on, requiring the defendant to verify his quarterly statements by affidavits, and the clause, *'and also agrees to pay the royalty on at least 2500 dozen of said pincers each year,'* are material conditions not in the draft offered in evidence [by the defendant;] and the jury are instructed that the question of the materiality of these conditions is for the court, and not for the jury, and the jury must, on this point, be governed by the instructions of the court; and if they believe, [from the evidence,] that the signature of defendant to the contract sued on was obtained in the manner set forth in the first instruction for the defendant, they should find for the defendant, even though they should be of the opinion that there was no material difference between the contract sued on and the draft offered in evidence by defendant.

"3. The jury are instructed, as a matter of law, that when two parties have agreed to the terms of a contract between them, and it has been reduced to writing, if one of the parties undertakes to make copies of the contract for the signatures of the parties, he is bound to do it truly; and if he presents to the other papers which he assures that other are

copies of such contract, it is not negligence in that other to sign without reading.

"4. The jury are further instructed that if they believe, from the evidence, that the signature of the defendant was obtained to the contract sued on in the manner set forth in the first instruction given on behalf of the defendant, and a judgment was rendered against him for one or more installments due thereon before he discovered the fraud, such judgment is no bar to his raising the defence of fraud to suits brought for subsequent installments.

"5. The jury are further instructed that if they believe, from the evidence, that plaintiffs made the representations described in the first instruction given on behalf of defendant, and that said representations were in fact untrue, then it makes no difference whether they knew of the falsity of such representations, or not."

The court refused to give the third, fourth and fifth instructions so asked by the defendant, and refused to give the first and second instructions as asked, but modified them by adding the words in brackets, and gave them (the first and second) as modified, to which ruling of the court the defendant at the time excepted. And thereupon the jury returned a verdict for the plaintiffs for $744. The defendant moved for a new trial, which motion was denied, and final judgment entered on the verdict. The Appellate Court for the First District, on appeal, affirmed the judgment of the Superior Court, and the defendant brings the case to this court by a further appeal.

Mr. F. Q. BALL, for the appellant:

When this case was first before the Appellate Court, that court decided that there were two material variations between the contract sued on and the original draft. This became *res judicata,* and was no longer open to discussion in this

case. *Ward* v. *Johnson*, 5 Bradw. 30; *Oldershaw* v. *Knowles*, 6 id. 330.

It is not indispensable to the right to rescind a contract that the party making the representations knew they were false, provided they are material, and the other party had a right to rely upon them, and did, and was deceived. *Allen* v. *Hart*, 72 Ill. 105.

If one party is trusted to reduce the contract to writing, he is bound to do it truly, and any variation from it materially affecting the other party, if not known to him, is a clear fraud. *Botsford* v. *McLean*, 45 Barb. 487.

Messrs. Smith & Burgett, for the appellees:

The rejected evidence was wholly irrelevant. Appellees did not contend that appellant had even made one pincer,— they asked only for the minimum royalty fixed by the contract.

To authorize the setting aside of a written instrument on the ground that the character or contents of it were unknown to a party when he signed it, and that he was deceived and misled into executing it, the rule is, that the facts must be established beyond controversy, and not simply by a preponderance of evidence. *Railroad Co.* v. *Shay*, 82 Pa. St. 198; *Edmunds' Appeal*, 59 id. 220; *Martin* v. *Berens*, 67 id. 460; *Tufts* v. *Larned*, 27 Iowa, 330; *Vary* v. *Shay*, 36 Mich. 388; *Ranney* v. *McMullen*, 5 Abb. (N. C.) 246; *Wilson* v. *Deen*, 74 N. Y. 531; *Albany City Bank* v. *Martin*, 56 How. Pr. 500; *Savings Inst.* v. *Burdick*, 20 Hun, 104; *Moran* v. *McLarty*, 75 N. Y. 25; *McClellan* y. *Sanford*, 26 Wis. 595; *Kercheval* v. *Doty*, 31 id. 476; *Lavassar* v. *Washburne*, 50 id. 200; *Wiles* v. *Harshaw*, 8 Ired. Eq. 308; *McMahon* v. *Spangler*, 4 Rand. 51; *Adams* v. *Robertson*, 37 Ill. 45; *Stampofski* v. *Hooper*, 86 id. 321; *Faucett* v. *Currier*, 115 Mass. 20; 109 id. 79; 2 Wharton on Evidence, secs. 934, 1243; 80 Ill. 28; 78 id. 342.

Mr. Justice Dickey delivered the opinion of the Court:

This case has been twice tried in the Superior Court of Cook county, the first trial resulting in a judgment in favor of the defendant, which was reversed by the Appellate Court for the First District, and the cause remanded. (*Strong et al.* v. *Linington,* 8 Bradw. 436.) On the cause being remanded another trial was had, resulting in a verdict and judgment in favor of the plaintiffs, and this last judgment has been affirmed by the Appellate Court.

It is contended by the appellant, that the Appellate Court, by its judgment when this case was first before it, decided that there were *two material variations* between the contract sued on and the original draft thereof, and that the question of the materiality of these variations became *res judicata,* and was no longer open to discussion either in the Superior or in this court. The judgment of the Appellate Court can have no such effect in this case, for the reason that it was not final. The defendant below (appellant here) could not have maintained an appeal or writ of error to review that judgment of the Appellate Court, and the appellees here could not have their own judgment reversed, and it not being final as to one party, could not be so held as to the other. If one party is concluded by a judgment, the other must be equally concluded.

On the trial the defendant offered to prove that he only made 9135 pincers, and that he ceased to manufacture them after a certain time, which, on objection, the court refused to allow. Under the contract upon which the suit was brought the defendant was bound to pay to the plaintiffs a royalty of $1.44 per gross on at least 2500 dozen of pincers each year, whether he made and sold that many or not, and consequently the proposed and rejected evidence, as the case was presented to the court, was wholly irrelevant, and there was no error in refusing to hear the same.

The appellant also urges that the Appellate Court erred in not reversing the judgment of the Superior Court for error in respect to the instructions given and refused. Complaint is made as to the first instruction given for the plaintiffs, which is to the effect that a party executing a written contract should exercise reasonable care and prudence to learn its nature and contents before signing it, by reading the same, if capable of reading, and that he would not be excused for his want of care and prudence in signing a contract without reading it, unless he was induced to do so by *willfully* false statements of the party procuring his signature. It is evident that the defendant here was seeking to avoid his contract for fraud on the part of the plaintiffs, or one of them. This is quite apparent from the defendant's first instruction, to the effect that fraud vitiates all contracts. At law an intent to deceive must exist to constitute actual fraud. Representations, though untrue, if not made with a knowledge of their falsity, can not be said to constitute fraud where the contracting parties occupy no fiduciary relation or position of confidence or trust towards each other. (*Sims* v. *Klein*, Breese, 234, *302; *White* v. *Watkins*, 23 Ill. 480; *Allen* v. *Hart*, 72 id. 104; *Fauntleroy et al.* v. *Wilcox et al.* 80 id. 477; *Merwin* v. *Arbuckle*, 81 id. 501; *Tone* v. *Wilson et al.* id. 529; *Wharf* v. *Roberts*, 88 id. 426; *St. Louis and Southeastern Ry. Co.* v. *Rice*, 85 id. 406.) The use of the word "willfully," in relation to the statements relied on in this case as constituting fraud, can not vitiate the instruction. The statements to which this word is applied were claimed to have been, that the triplicates presented for execution were correct copies of the original draft of the contract, except as to a matter not affecting the defendant's interest in the least, and if they were false, the party making them must have known their falsity.

No error is perceived in the modification of the appellant's first and second instructions, nor in refusing the others. What has been said in regard to the plaintiffs' first instruc-

tion applies to the defendant's fifth instruction. What is negligence in signing a contract without reading the same, is not a question of law, but one of fact for the jury, to be judged of from the peculiar facts and circumstances of each case. In such a case it is hardly proper to select certain facts, and tell the jury that they afford no evidence of negligence or want of proper and reasonable care.

Without noticing every point, it is sufficient to say that we find no error in the record calling for a reversal, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*