WILLIAM FRIEDMAN, Assignee,

v.

. JACOB H. LESHER et al.

198    21
215   ²233

*Opinion filed June 19, 1902—Rehearing denied October 10, 1902.*

1. APPEALS AND ERRORS—*when judgment of Appellate Court is a final judgment.* A judgment of the Appellate Court reversing and remanding, with direction to proceed in conformity "with the views expressed in the opinion of this court this day filed herein," which opinion finally disposes of the issues in the case, is a final judgment, which may be reviewed upon appeal or error.

2. SAME—*when judgment of Appellate Court is not res judicata.* A judgment of the Appellate Court reversing and remanding without directions is not *res judicata* upon the second trial, where the parties introduce additional and material testimony overthrowing the presumption upon which Appellate Court acted in reversing.

3. INSOLVENCY—*law cannot ignore legal right of creditor to a preference.* While the law looks with favor upon an equitable distribution of the assets of an insolvent among all creditors, yet it cannot ignore the legally established right of a creditor to a preference.

4. SAME—*when creditor obtains a preference in voluntary assignment.* If an execution is delivered to the sheriff after an unauthorized voluntary assignment has been made, but before the same has been ratified by the directors of the insolvent corporation, the execution creditor acquires a preference.

5. SAME—*voluntary assignment by corporation must be authorized by directors—ratification.* The president or vice-president of a corporation cannot legally make a voluntary assignment unless authorized by the board of directors, and while an unauthorized assignment may be ratified by the directors and the ratification relate back to the time of the assignment, yet it will not affect the intervening rights of creditors which have attached.

6. SAME—*fact that vice-president holds majority of stock does not authorize her to make assignment.* The fact that the vice-president of a corporation owns the majority of the stock does not give her the right, upon the death of the president, to make an immediate voluntary assignment without the authority of the directors.

*Lesher v. Friedman,* 99 Ill. App. 42, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

JOHN S. STEVENS, for plaintiff in error.

ALDEN, LATHAM & YOUNG, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The M. H. Vehon Company was incorporated under the laws of this State February 28, 1895, with a capital stock of $6000. The shares of stock were $100 each, of which Morris H. Vehon owned four, A. Strumpf six and Marie H. Vehon fifty. These three stockholders were the directors of the company, Morris H. Vehon being the president, and Marie H. Vehon, his wife, vice-president. Within a year of its organization the company became embarrassed financially. Prior to February 10, 1896, it had executed to Jacob H. Lesher and John H. Bobo, as J. H. Lesher & Co., a judgment note for $1500. On the evening of June 5, Morris H. Vehon, the president and general manager of the company, suddenly died. On the following morning Marie H. Vehon, as vice-president, without authority from the board of directors, executed and delivered a deed of voluntary assignment, under the statute, for the benefit of the company's creditors. That instrument was recorded at 9:25 A. M. June 6, and filed with the clerk of the county court at 9:30 A. M. the same morning. At 9:27 A. M. of the same day Lesher & Co. entered a judgment in the circuit court of Cook county upon their note, for $1550, and caused an execution to be immediately issued, which was delivered to the sheriff of the county at 9:35 A. M., and he instructed to levy upon the tangible property of said M. H. Vehon Company. On reaching the company's place of business he found the assignee in possession of the same and of all its property, and he therefore returned the execution at the end of ninety days, unsatisfied. About eight o'clock P. M. of the same day, June 6, 1896, the two surviving directors met and ratified the making of the assignment. Claims were filed against the insolvent estate amounting to

$9234.22, $1629.04 of which was the claim of Lesher & Co., $1557.16 of that amount being the judgment by confession so obtained on the 6th of June, for which they claimed a lien upon the company's assets and priority over the other creditors. The total assets of the insolvent estate were $2738.93. Upon the hearing in the county court the claim of priority was sustained and the assignee directed to pay the judgment in full. The assignee prosecuted an appeal from that order to the Appellate Court for the First District. The branch of that court to which the record was assigned reversed the order of the county court and remanded the cause generally. It was then stipulated by the parties that the cause should be reheard upon the complete record as filed in the Appellate Court on the appeal, "and such other evidence as either of the parties might offer." Upon that hearing an order was entered by said county court January 12, 1901, denying the petition by Lesher & Co. for a preference, but allowing their claim as a general claim against the assigned estate. From that order they prosecuted an appeal to the Appellate Court for the First District, which, on December 12, 1901, filed an opinion, in which it was stated that the judgment of the county court was reversed and the cause remanded to that court for further proceedings in conformity with the views expressed in the opinion. It seems that the clerk, in entering the order of remandment, made it read, "such further proceedings as to law and justice may appertain." Subsequently, at the same term, the appellants entered a motion to correct that entry so as to make it conform to the judgment actually rendered, as shown by the opinion filed, which motion was allowed, but instead of amending the former order made, the clerk entered an original one, "remanding the cause for further proceedings in accordance with the views herein expressed." Thereupon a further motion was made on February 15, 1902, (as shown by the additional record heretofore allowed to be filed in this

court,) to correct said last mentioned mistake, which was granted and the final judgment corrected so as to read: "The order and judgment of the county court of Cook county in this behalf rendered be reversed, * * * and that this cause be remanded to the county court of Cook county for further proceedings in accordance with the views expressed in the opinion of this court this day filed herein." From that judgment the plaintiff in error assignee of the M. H. Vehon Company prosecutes this writ of error.

The defendants in error have entered their motion to dismiss the writ upon the ground that the judgment of the Appellate Court is not final, which motion has been taken with the case.

The proceeding in the county court was an equitable or chancery proceeding. The only issue in that court was whether or not defendants in error were entitled to a preference over the other creditors of the estate. The court found the issue against the claimants. The Appellate Court, it is true, reversed the judgment and remanded the cause to the county court, but it did so with special directions to proceed according to the views expressed in its opinion, which opinion finally disposed of the issue below. If the cause had been re-instated in the county court, all that court could do would be to carry into effect the directions of the Appellate Court. Section 90 of the Practice act allows appeals from and writs of error to the Appellate Court in all cases where the judgment, order or decree of that court is such that no further proceedings can be had in the court below except to carry into effect its mandate and directions. (Hurd's Stat. 1899, p. 1297; *Englewood Connecting Railway Co.* v. *Chicago and Eastern Illinois Railroad Co.* 117 Ill. 611; *Platte Valley State Bank* v. *National Live Stock Bank,* 155 id. 250.) Had the order of remandment been general, or with directions to the court below to proceed as the order was first entered, —that is, for "such further proceedings as to law and

justice shall appertain,"—then the case would have been opened up in the county court generally; or if the action had been at law, in which case either party would be entitled to a jury, the order would not have been final, within the meaning of the statute. On this record we entertain no doubt that by the terms of the statute a writ of error will lie, and therefore the motion to dismiss will be denied.

On the merits of the case it is first insisted by the plaintiff in error that the judgment of the Branch Appellate Court on the first appeal from the order of the county court is *res judicata*. With this contention we can not agree. The judgment of that court reversed the decree of the county court and remanded the cause without directions. Lasher & Co. could not have prosecuted an appeal or sued out a writ of error to review that judgment, because it was not final. It could not, therefore, be conclusive between the parties. (*Linington v. Strong*, 111 Ill. 152; *Henning v. Eldridge*, 146 id. 305; *Board of Trade v. Nelson*, 162 id. 431.) Nor did the parties understand or treat that judgment as an estoppel upon the second hearing. They stipulated for the introduction of further evidence, and very material and important additional testimony was offered, overcoming completely the presumption, as held by the Branch Appellate Court, that the board of directors had authorized the assignment made by the vice-president. The judgment of reversal by the Branch Appellate Court could have no proper bearing upon the merits of the case on the second hearing.

The law undoubtedly looks with favor upon an equitable distribution of the assets of an insolvent among all his or its creditors, but in doing so it cannot ignore the legal right of a creditor to a preference over others, where that right is legally established. When the execution in favor of Lesher & Co. came into the hands of the sheriff of Cook county it at once became a lien upon all the property and assets of the defendant, the M. H.

Vehon Company, then liable to execution, (Hurd's Stat. 1899, chap. 77, sec. 9,) and therefore, unless the rights of the assignee had at that very time legally attached, the execution creditors were entitled to the preference given them by the judgment of the Appellate Court. This question must, we think, depend upon the validity of the assignment made by Mrs. Marie H. Vehon on behalf of the company, as its vice-president, at the time it was executed and filed in the county court, because the execution was delivered to the sheriff before the ratification of that assignment, and although the affirmance or ratification of an unauthorized act will relate back to the date of the act, it cannot be held to do so to the prejudice of intervening rights. (*State Nat. Bank* v. *Union Nat. Bank*, 168 Ill. 519; *Norton* v. *State Nat. Bank*, 102 Ala. 420.) This we do not understand counsel for the plaintiff in error to deny. Nor can it be denied, as a general rule, that neither the president, vice-president or other officer of a corporation can lawfully make an assignment for the benefit of creditors without being authorized to do so by the board of directors. "Unless otherwise provided by statute, the general rule is, that a corporate assignment must be executed by the board of directors, or a quorum thereof, at a meeting duly called for that purpose, or by the president or some other officer of the corporation, as authorized by the directors." 3 Am. & Eng. Ency. of Law, (2d ed.) 24, and cases cited in note 2; 4 Thompson on Corporations, sec. 4636; *State Nat. Bank* v. *Union Nat. Bank, supra.*

Plaintiff in error, by the argument of counsel, bases his case upon the proposition that "the execution of the assignment, under the circumstances of this case, was effectual, as being a proper exercise of the power vested in the vice-president." We have examined with care the authorities cited in support of the statement and do not think they are in point, and we have been unable to discover authority for holding, in a case like this, where it expressly appears that the assignment was made without

any authority whatever from the directors of the corporation, that the right to do so may be implied. It is perhaps true, that in the absence of proof to the contrary such authority would be presumed. But that is not this case. The president being dead, the vice-president could, under the exigencies of the case, act in his stead; but neither she nor the president could convey or transfer the property of the corporation without the consent of the board of directors, who alone were authorized to represent the stockholders. It is true, the vice-president owned a large·majority of the shares of stock; but that fact could not vest her with any additional power. Even if it were true that a crisis in the business of a corporation would justify the president (or vice-president) to make an assignment of its property without authority from the directors,—which we do not concede,—we are unable to see in this case that there was such a crisis. The company was manifestly insolvent for a long time prior to the assignment, and the only motive apparent for making it at that particular time was to prevent the defendants in error from gaining a preference over other creditors. Within a few hours after the deed was executed a meeting of directors was called and held, at which the assignment was ratified. There is nothing to show that the emergency required the action of the vice-president before that meeting could be called, except the purpose of preventing the defendants in error from collecting their debt,—an emergency or crisis which, if not always, generally prompts an assignment for the benefit of creditors.

We are of the opinion that the judgment of the Appellate Court is in conformity with the law and facts as shown by the record, and it will accordingly be affirmed.

　　　　　　　　　　　　*Judgment affirmed.*