## MORRISON v. RIEMAN.

(Circuit Court of Appeals, Seventh Circuit. September 4, 1917. Rehearing Denied December 20, 1917.)

### No. 2451.

1. BANKRUPTCY ⬤⟶93—PROCEEDINGS—JURY TRIAL.
    Where a bankrupt, having demanded a jury trial on the question of his insolvency, as allowed by Bankruptcy Act July 1, 1898, c. 541, § 19, 30 Stat. 551 (Comp. St. 1916, § 9603), moved for leave to withdraw the request, which was denied, a jury being called notwithstanding, the calling of a jury was upon the court's own motion, and the verdict was merely advisory.

2. BANKRUPTCY ⬤⟶467—APPEAL—MATTERS ASSIGNABLE AS ERROR.
    Where the bankruptcy court on its own motion submitted to a jury the question of the alleged bankrupt's insolvency, the verdict of a jury is merely advisory, and error is not predicable on the court's remarks, or on its charge to the jury.

3. BANKRUPTCY ⬤⟶91(2)—INSOLVENCY—FINDINGS.
    In a proceeding in bankruptcy, evidence *held* to warrant a finding that, after the bankrupt conveyed all but one parcel of his lands, he was insolvent.

4. BANKRUPTCY ⬤⟶57—ACTS OF BANKRUPTCY—WHAT CONSTITUTES.
    Where property conveyed by an alleged bankrupt largely exceeded debts discharged or assumed by the grantee, the conveyance must be deemed an act of bankruptcy, and intended to hinder and delay the petitioning creditor, whose claim was not assumed, though the grantee, as part of the consideration, executed and secured the approval of a bond superseding, for purposes of appeal, a judgment in favor of the petitioning creditor.

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    249 F.—7

**5. BANKRUPTCY ☞76(1)—PETITIONING CREDITORS—"SECURED CREDITOR."**

While Bankruptcy Act, § 1a (23) (Comp. St. 1916, § 9585), provides that the term "secured creditor" shall include a creditor who has security for his debt upon the property of the bankrupt, or who owns such a debt for which some indorser, surety or other person secondarily liable, has such security upon the bankrupt's assets, and sections 56b, 57e, 57g, and 57h (Comp. St. 1916, §§ 9640, 9641), contain no express provision allowing a secured creditor to surrender his security, so as to come within section 59b (section 9643), and file a petition, a judgment creditor, whose judgment had been superseded by a bond signed by a grantee of a bankrupt, may surrender his security and file a petition in bankruptcy, for, if such creditor's judgment were reversed and the cause remanded, his security would be lost, although he might still have a claim provable within section 63a (4) (Comp. St. 1916, § 9647).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Secured Creditor.]

**6. BANKRUPTCY ☞84—PETITION—AMENDMENT.**

In view of Bankruptcy Act, §§ 59f, 59g, allowing creditors other than original petitioners to join in an involuntary petition in bankruptcy, and rule 86, making provision for amendments, a petitioning creditor, who was secured, may thereafter waive his security and amend his petition.

**7. BANKRUPTCY ☞84—AMENDMENTS—ALLOWANCE.**

The general power to permit amendments, within sound discretion, inheres in bankruptcy as well as in other courts.

**8. BANKRUPTCY ☞76(1)—SECURITY—WAIVER.**

Where a secured creditor deliberately, and not through error or inadvertence, files his claim as unsecured, making no mention of his security, he waives it in favor of the estate, and cannot, after adjudication, assert it; so a petitioning creditor, who was secured, may by express waiver and surrender of his security bring himself within the terms of Bankruptcy Act, § 59b, and alone file an involuntary petition.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

On petition of Charles S. Rieman, Edward W. Morrison was adjudicated a bankrupt, and he appeals. Affirmed, on condition, and, in event of petitioner's failure to comply with condition, cause held for further consideration.

Appeal from order adjudicating Morrison a bankrupt. Morrison's property consisted of real estate in Chicago valued at over $500,000. Rieman, having a claim in contract against Morrison, on March 22, 1916, recovered a judgment thereon in the municipal court of Chicago for $90,188.01, and execution on the judgment issued. By warranty deed of April 20, 1916, Morrison made absolute conveyance of all his real estate to James R. Ward, for a recited consideration of "$100,000 in hand paid and other consideration." Morrison and Ward testified that the consideration for the conveyance was the cancellation of all then existing indebtedness of Morrison to Ward, and the assumption and payment by Ward of all Morrison's then outstanding debts, except that to Rieman (to whom Morrison denied owing anything), and the undertaking by Ward to prosecute for Morrison appellate proceedings from the Rieman judgment, and secure requisite bond for staying collection of the judgment pending such determination of such proceedings. A writ of error was sued out in the Appellate Court of Illinois, and on June 7, 1916, a supersedeas bond in penal sum of $100,000, signed by Ward as surety, was approved by that court and filed, and supersedeas issued accordingly. The proceeding on error is still pending and undetermined. August 16, 1916, Rieman alone filed petition in bankruptcy, alleging the indebtedness to him from Morrison to be $90,206.76, upon a contract, the debt being evidenced by a judg-

ment for that amount, and alleging Morrison's insolvency, that his creditors were less than 12, and that he had committed acts of bankruptcy by conveyance of his property within four months by way of preference to certain creditors, to Rieman's detriment, and through such conveyance hindering, delaying, and defrauding his creditors other than those so preferred. Morrison filed his answer denying insolvency and the commission of the acts of bankruptcy charged, and asking for a jury trial of the issues. In his amended answer the demand for a jury trial was not renewed. On trial of the issues by a jury there was a verdict against Morrison, and November 15, 1916, he was adjudicated bankrupt.

At the time of the adjudication there was produced in court, and was thereafter filed for record, a deed from Ward reconveying to Morrison a piece of the said real estate, known as the Sebor street property. It was testified by Ward and Morrison that this piece had been inadvertently included in the deed to Ward; that such fact was discovered during the proceedings for obtaining the supersedeas; that the deed back to Morrison was executed and delivered to him on the day of its date, July 17, 1916; and that it remained in Morrison's possession unrecorded, Morrison continuing as theretofore to collect the income from that property. There was sharp contrariety of evidence as to the value of this piece, the testimony of the expert witnesses ranging from $130.000 to $11,000. After verdict, and before adjudication, petitioner by leave of court filed a verified amendment to his petition as follows: "That whatever lien or security your petitioner has or had at the time of the filing of the petition herein by reason of his said judgment, or by virtue of the execution issued thereon, the said petitioner does hereby release and waive as to any estate which the said alleged bankrupt possessed or owned at the time of the filing of the original petition herein, and does hereby surrender any such security or lien to the estate of the said alleged bankrupt. This petitioner further hereby releases and surrenders whatever lien or security he has or may have on any property or estate of the said alleged bankrupt, or which may hereafter come into the estate or be recovered for the estate of the said alleged bankrupt."

The assignment of errors challenges the finding of insolvency and of commission of acts of bankruptcy, the provability of Rieman's claim, and his right to be a petitioning creditor, and the propriety of certain remarks of the court made in the presence of the jury, and of certain parts of the court's charge to the jury.

James R. Ward and Frank H. Culver, both of Chicago, Ill., for appellant.

James Rosenthal, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1, 2] Respecting the errors alleged based on remarks by the court, and the charge to the jury, it appears that in appellant's original answer jury trial was demanded, but in his amended answer such demand was not renewed; and before the jury was called he moved the court for leave to withdraw his demand for a jury, and appellee joined in this request, which was denied by the court, and a jury was called notwithstanding. While the alleged bankrupt may demand a jury trial (Bankruptcy Act, § 19), these facts amounted to a waiver of jury trial, and the calling of the jury thereafter was upon the court's own motion, just as would have been the case had the court called a jury without any demand therefor having ever been made. The verdict is therefore not of binding force, but is advisory to the court as in issues out of chancery (Carpenter v. Cudd, 174 Fed. 603, 98 C. C. A. 449, 20 Ann. Cas. 977; Oil Well Supply Co. v. Hall, 128 Fed. 875, 63 C. C.

A. 343), and as in chancery this court will search the record to determine therefrom whether a proper order or decree has been entered, regardless of the jury's verdict, save only so far as the court may thereby be advised. In such case error is not predicable on the court's remarks or its charge to the jury.

[3] On the question of Morrison's solvency, if it be assumed that the title of the Sebor street property was all the time in Morrison, it is apparent that it alone would not rescue him from the charge of insolvency as against Rieman's claim for over $90,000. The evidence of its value ranged from a maximum of $130,000 to a minimum of $41,000, with but little, if anything, in the evidence corroborative of the one more than of the other figure. The finding was thus warranted that the Sebor street property was not worth enough to meet the Rieman claim; and of course all his other property, which, as was testified, had been absolutely and irrevocably conveyed to Ward, could have no bearing on appellant's solvency.

[4] Assuming that Rieman was properly a petitioning creditor, was the finding unwarranted that acts of bankruptcy were committed through the conveyance to Ward? Ward and Morrison both testified that by the conveyance Ward and all other creditors of Morrison, except Rieman, were paid or to be paid. The amount of such debts is not certain under the evidence. Ward claims it was about $100,000, but, whatever the amount, the payment through the conveyance was clearly preferential as against Rieman, thus constituting an act of bankruptcy by Morrison. The fact that Ward signed the supersedeas bond and secured its approval in part consideration of the conveyance to him cannot as against a petition in bankruptcy be regarded as a consideration, which, as between Morrison and Rieman, would support the conveyance for the concededly large surplus in value of the property conveyed, over and above Morrison's debts so discharged or assumed. As to such surplus in value, the conclusion was warranted that the conveyance was in hindrance and delay of Rieman, and an act of bankruptcy. That Morrison and Ward may have believed Rieman's claim unconscionable, and that ultimately it will be defeated, is beside any question here.

[5] The main contention of appellant is that through the lien of Rieman's judgment upon all of Morrison's real estate—the Sebor street property as well as that which was conveyed to Ward, and through the supersedeas bond given in the Illinois Appellate Court, Rieman's judgment was fully secured; that being a secured creditor within the meaning of the Bankruptcy Act, with security valued at more than the amount of his claim, he did not have a provable claim against the bankrupt, and not having such provable claim he was disqualified from being a petitioning creditor.

Section 59b of the Bankruptcy Act requires that the single petitioning creditor (where the creditors are less than 12) shall have a provable claim of $500 or more in excess of the value of securities held by him. Section 1a (23) provides that:

"'Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt, of a nature to be assignable under this

act, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets."

Whether the lien of this judgment, and the supersedeas bond, did constitute Rieman a secured creditor, within the meaning of the quoted section, may be unnecessary to be considered in view of certain other proceedings in the cause. It appears that after the verdict of the jury, and before the adjudication, by leave of court Rieman filed an amendment to his petition, undertaking to release and to waive the lien of his judgment against any property of the bankrupt subject thereto, presumably with the view of surrendering any security for his claim. If holding security rendered his claim unprovable, and himself therefore disqualified to be a petitioning creditor, may he by voluntarily surrendering the security make his claim provable, and thus qualify him to be a petitioning creditor?

There is no section of the Bankruptcy Act which specifies that this may be done. Sections 56b and 57e, 57g, and 57h deal with the ascertainment of the amount of claims above the value of securities, and with the surrender of preferences, and the like. The surrender of securities is not dealt with. But we see no reason why one holding security may not surrender it and prove his whole claim. Collier states the rule as follows:

"A secured creditor may or may not surrender his security as he chooses. If he does, it inures to the benefit of all creditors, and his claim, if otherwise unobjectionable, is allowable at the full amount." Collier on Bankruptcy (1914) pp. 721, 722.

Brandenburg says:

"A secured creditor may file proof of claim at his option, but unless a secured creditor surrenders his security, and proves his debt as unsecured, he is required to make proof of the whole debt as in the case of an unsecured debt, except a statement of all securities should be included in the proof." Brandenburg, Bankruptcy (1917) § 631.

In the same section it is stated that a secured creditor has three alternatives: First, he may prove the amount of his claim, specifying the securities held; second, he may decline to make any proof and retain his security; and, third, he may either directly or indirectly waive his security and prove his claim as unsecured. Assuming that the judgment lien and the supersedeas bond constituted Rieman a secured creditor, the instant case illustrates the embarrassment and disadvantage which might ensue if he may not waive and surrender the security and proceed as an unsecured creditor. If, by the conveyance to Ward, Morrison preferred certain of his creditors, any creditor injured thereby, holding a provable claim, could within four months resort to bankruptcy for relief. The state law would not assist him, since in Illinois an insolvent debtor may with impunity give preference to some creditors over others. Farwell et al. v. Nilsson et al., 133 Ill. 45, 24 N. E. 74; Morriss et al. v. Blackman et al., 179 Ill. 103, 53 N. E. 547; Friedman v. Lesher, 198 Ill. 21, 64 N. E. 736, 92 Am. St. Rep. 255. But Rieman, if considered a secured creditor, and therefore not qualified to be a petitioner, could do nothing but take

his ·chances on maintaining his lien through affirmance of his judgment. If this were reversed, and the cause remanded for a new trial, his security would at once vanish; but, his claim being founded in contract, he might still have a provable debt against Morrison. Section 63a(4). In the meantime, however, four months would have elapsed since the preferential payment through the conveyance, and he would then be wholly without relief against the preference, although his claim might be eventually adjudged in his favor. This would in a sense be penalizing a creditor who reduces his claim to judgment, which may for the time being be a lien on the debtor's real estate, through withdrawing from him the protection of the bankruptcy law against preferential payments—protection which is accorded to those creditors who had not yet proceeded so far as to obtain judgment which gave its holder a lien which would afford him sufficient security if the judgment remains unreversed.

[6-8] Appellant insists that, since the waiver or surrender was not made before or at the time the petition was filed, it could not subsequently be made by way of amendment or otherwise. We think the act manifests a policy of liberality in regard to amendment. Section 59f provides that creditors other than original petitioners may at any time enter appearance and join in the petition to file answer and be heard in opposition to it; and section 59g requires a notice to other creditors before any petition shall be dismissed for want of prosecution or by consent evidently in order that there may be no dismissal of a petition if as to any one it ought to be retained. Rule 86 makes provision for amendments. The general power to permit amendments within sound discretion inheres in bankruptcy as well as in other courts. Armstrong v. Fernandez, 208 U. S. 324, 330, 28 Sup. Ct. 419, 52 L. Ed. 514; Chicago Motor Vehicle Co. v. Am. Oak Leather Co., 141 Fed. 518, 72 C. C. A. 576 (7th C. C. A.); In re Shoesmith, 135 Fed. 684, 68 C. C. A. 322 (7th C. C. A.). Instances are quite frequent where adjudications of bankruptcy or allowance of claims have been made contingent upon the petitioner or claimant doing things which in strictness should before have been done and set forth in petition or proof of claim. In re Murphy (D. C.) 225 Fed. 392; Stevens v. Nave-McCord Co., 150 Fed. 71, 80 C. C. A. 25; In re Gillette (D. C.) 104 Fed. 769. But even if the amendment, made when it was, were of no avail, and appellee must rely on his petition as first filed, the rule seems well established that where a secured creditor deliberately, and not through error or inadvertence files his claim as unsecured, making no mention of his security, he thereby waives it in favor of the estate, and cannot, after adjudication, assert it. White v. Crawford (C. C.) 9 Fed. 371; In re Bloss, Fed. Cas. No. 1,562; Brandenburg, Bankruptcy (4th Ed.) p. 479; Collier, Bankruptcy (10th Ed.) pp. 726, 727.

The amendment, however, in our judgment falls short of its probably intended purpose of investing the trustee in bankruptcy, for the benefit of the estate, with whatever right to the security which the petitioner in bankruptcy had. This is particularly so as to the second paragraph of the amendment, which seems to deal with other than the

Sebor street property. Waiver and surrender alone might extinguish the lien without benefiting the estate; and unless the estate can have the benefit of the security, the waiver might serve only to increase the general claims against the estate without augmenting its assets. In the instant case we cannot assume that in a proceeding to set aside the conveyance to Ward, if such becomes necessary and is authorized, the trustee will prevail. In the event, therefore, that the Rieman judgment is affirmed, if Rieman should merely have waived his security, and the estate not become invested with it, Ward, holding the title to the property, might become the beneficiary, leaving the unsecured Rieman judgment a general claim against the estate, payable out of assets other than the bond and the lien on the property now held by Ward. If Rieman's judgment is affirmed, it is possible that the Sebor street property plus what the trustee might then realize on the supersedeas bond, if available to him, would prove sufficient to meet the claims allowed for payment, without need to bring into the bankruptcy the property conveyed to Ward, with which, of course, the trustee has no business, save only in case it may become necessary to undertake resort to it in order to pay the debts. While it may be that the waiver and surrender would alone invest the trustee with Rieman's title to the security thus surrendered, there should be no question in this regard.

If, therefore, within 30 days after this date appellee will file with the clerk of the District Court an instrument in writing conveying to the trustee in bankruptcy, hereafter to be named, for the benefit of this bankrupt estate, all interest of appellee in and to any and all lien and security which he holds for the payment of his said judgment, including the supersedeas bond, and the lien acquired through the rendition of the judgment and the execution issued thereon, the order of adjudication will be affirmed, with costs. Otherwise, the cause will be held for further consideration.