*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re:  JACKIE BAILEY; PEGGY BAILEY,
                                     *Debtors*.
_____

SALYERSVILLE NATIONAL BANK,
                                     *Appellant,*

         *v.*

JACKIE BAILEY; PEGGY BAILEY,
                                     *Appellees.*

No. 10-5505

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 09-00039—Henry R. Wilhoit, Jr., District Judge.

Argued:  October 6, 2011

Decided and Filed:  December 12, 2011

Before:  KEITH, SUTTON and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  John T. Hamilton, GESS MATTINGLY & ATCHISON, PSC, Lexington, Kentucky, for Appellant.  Carolyn M. Friend, FRIEND & ASSOCIATES, Georgetown, Kentucky, for Appellees.  **ON BRIEF:**  John T. Hamilton, GESS MATTINGLY & ATCHISON, PSC, Lexington, Kentucky, for Appellant.  Carolyn M. Friend, FRIEND & ASSOCIATES, Georgetown, Kentucky, for Appellees.

_____

## OPINION

_____

    SUTTON, Circuit Judge.  Jackie and Peggy Bailey fell on hard times, forcing them to seek protection from their creditors through the bankruptcy laws.  In the course

of the bankruptcy proceeding, they signed a reaffirmation agreement with their mortgage lender, which allowed them to stay in their home, obligated them to continue making their full mortgage payments after the bankruptcy and was premised on the assumption (later proved false) that the lender had properly perfected the mortgage. Because the parties premised the contract on a mutual mistake—that the bank was a secured creditor—it is unenforceable under Kentucky law. We affirm.

I.

In 2001, Jackie Bailey and his wife Peggy borrowed $157,291.77 from Salyersville National Bank, pledging their home and 40 acres of land as security. In 2004, they took out a second loan from the bank for $15,870, this time pledging their 1998 Chevrolet pickup truck as security. The Baileys encountered marital and financial problems, filing for divorce in January 2005 and for Chapter 7 bankruptcy protection four months later.

Less than one month after seeking bankruptcy protection, the Baileys and the bank signed a reaffirmation agreement committing the Baileys to pay those two debts, which would otherwise have been dischargeable in bankruptcy. Under the agreement, the Baileys "reaffirm[ed] certain secured indebtedness" (the 2001 and 2004 loans) and "maintain[ed] possession of property secured thereby" (their home and truck) in return. R.11 Ex. D at 1.

Not long after signing the reaffirmation agreement, the Baileys stopped paying back the loans. The bank tried to repossess the truck. When it learned that the truck had a "blown engine and transmission" and, worse, had been stolen (the thief perhaps getting what he deserved), the bank gave up on the quest. R.14 Ex. 4 at 1. The bank filed a "wholly unsecured claim" against the bankruptcy estate because "its collateral was not available to be repossessed and sold." *Id.* As for the real property, the bankruptcy trustee sued the bank, seeking a declaration that the lien on the property should be avoided—thus preserving the property for the benefit of the bankruptcy estate—because the bank had not properly perfected the mortgage. The trustee's suit was ultimately settled by an agreed judgment. The agreed judgment provided that the real property

would be sold by the trustee at an auction with the proceeds going to the estate, and, in the event the bank purchased the property, "the portion of the Trustee's Complaint relating to avoidance of the mortgage of Salyersville National Bank shall be considered dismissed with prejudice, and the mortgage shall remain in effect." R.11 Ex. F at 2.

The bank bought the property at the auction, re-sold it to a third party at a profit of $33,400 and filed an unsecured claim with the bankruptcy estate for the full balance the Baileys owed on the mortgage. The bankruptcy court allowed this claim and in the process determined that the bank was an unsecured creditor. In doing so, the bankruptcy court made explicit what the agreed judgment had established implicitly. The bank received a total of about $37,000 in payments from the bankruptcy estate as an unsecured creditor on the two loans.

The end of the bankruptcy case in December 2007 sparked the beginning of a new lawsuit in January 2008. The bank sued the Baileys in Kentucky state court, seeking about $89,000 on the real property loan and about $11,500 on the truck loan. In response, the Baileys moved the bankruptcy court to reopen their case under Rule 60 of the Federal Rules of Civil Procedure (applicable via Rule 9024 of the Federal Rules of Bankruptcy Procedure) and to declare the reaffirmation agreement void. The bankruptcy court obliged. It voided the reaffirmation agreement on the ground of mutual mistake because the parties signed the agreement based on the false assumption that the bank held secured interests in the real property and the truck, which would have allowed the Baileys (rather than the bankruptcy estate) to retain ownership of those items. The district court affirmed on the same grounds.

II.

A reaffirmation agreement selectively excludes some debts from the effect of a bankruptcy discharge. In its classic form, the debtor agrees to remain on the hook for an obligation that otherwise would be dischargeable in bankruptcy in exchange for the right to keep collateral that he otherwise would have to give up. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000). Under the Bankruptcy Code, such

agreements bind the parties if they are "enforceable under applicable nonbankruptcy law," including state contract law.  11 U.S.C. § 524(c).

The lower courts held that this reaffirmation agreement is unenforceable under Kentucky law because the parties premised it on a mutual mistake:  that the bank had secured interests in the Baileys' real property and truck.  The bank asks us to reverse that decision for two reasons:  (1) there was no mutual mistake because the bank in truth was a secured creditor, and (2) even if the bank was an unsecured creditor, the reaffirmation agreement is still valid under Kentucky contract law.  The first argument is procedurally lost, and the second one is substantively wrong.

## A.

The bank insists it has always been a secured creditor with respect to the two loans.  But the history of this litigation forecloses that possibility.

Under the Bankruptcy Code, "there are several avenues of action open to a secured creditor of a bankrupt."  *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 33 (1947).  Generally speaking, a secured creditor:  (1) "may disregard the bankruptcy proceeding," subject to the provisions of 11 U.S.C. § 362(a), "and rely solely upon his security"; (2) may file a secured claim with the bankruptcy court; (3) may "surrender or waive his security and prove his entire claim as an unsecured one"; or (4) may "avail himself of his security and share in the general assets [of the bankruptcy estate] as to the unsecured balance" of the debt.  *Johnstown*, 331 U.S. at 33.  Once he selects one of these options, he may not disavow that choice and proceed down a different path.  In particular, "participation by a secured creditor in distributions from the general assets [of the bankruptcy estate] on the basis of his full claim [generally] indicates a waiver of the security and an election to be treated as an unsecured creditor."  *Id.* at 35; *see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 379 (1988).

Just such a waiver happened here.  As to the truck:  although the bank apparently believed it had a perfected security interest in the 1998 Chevy pickup, it came to view

the loan as being "essentially unsecured from the outset" because the truck was in poor condition, to say nothing of stolen, making it unattractive as collateral. R.14 Ex. 4. Rather than file a claim as a secured creditor or attempt to recover insurance proceeds for the stolen truck, the bank "filed [its] claim as a wholly unsecured claim." *Id.* It received about $2,400 on this claim from the estate. The bank cannot complain that it now should be treated as a secured creditor after all. *See Morrison v. Rieman*, 249 F. 97, 102 (7th Cir. 1917) ("[W]here a secured creditor deliberately, and not through error or inadvertence files his claim as unsecured . . . he thereby waives it in favor of the estate, and cannot, after adjudication, assert it.").

As to the real property: a dispute arose between the bankruptcy trustee and the bank about whether the bank had a valid security interest in the Baileys' home. After litigation that cost the bankruptcy estate more than $31,000 in attorney's fees, the bank entered into an agreed judgment that, as the bankruptcy court noted, effectively ceded the property to the bankruptcy estate, which "[sold] the subject real estate free and clear of the Bank's putative mortgage" and collected all proceeds from the sale of the property at auction. R.14 Ex. 5 (Bankr. Ct. Order, 12/12/06) at 4–5. The bank filed an unsecured claim for the full amount of the debt in question and received around $35,000 on this claim. On this record, the bank's argument faces two insurmountable obstacles: (1) the bank waived the right to proceed as a secured creditor with respect to the real property, *see Johnstown*, 331 U.S. at 35; *Morrison*, 249 F. at 102; and (2) the bankruptcy court's final, unappealed 2006 order treated the bank as an unsecured creditor, precluding the bank (or us) from revisiting the issue, *see Katchen v. Landy*, 382 U.S. 323, 334 (1966).

The bank insists that, rather than waiving the security interest, it pursued the fourth avenue open to secured creditors under *Johnstown*: availing itself of its security and filing as an unsecured creditor with respect to the balance of the debt. Not true. The bank relinquished its collateral in the agreed judgment and became an unsecured creditor. Had the bank successfully exercised its lien on the real property, it would have sought only the amount remaining on the Baileys' debt after liquidating the property (thus satisfying the secured portion of its claim). But the bank never successfully

invoked its rights under the lien, an option it abandoned when it entered into the agreed judgment. Instead, it filed and received payment as an unsecured creditor based on a debt of $154,752.79, the full amount the Baileys owed, and conducted a separate (and profitable) transaction by buying the property at auction from the bankruptcy estate for $96,600 and reselling it for $130,000. Likewise for the truck: the bank never obtained the truck or its insurance proceeds directly from the Baileys; it filed and received payment on an unsecured claim for the full amount of its debt.

The Baileys, it is true, failed to live up to their end of the bargain when they stopped paying the reaffirmed debt. But that left the bank another option. It could have "pursue[d] its collateral," then "pursue[d] [the Baileys] for any deficiency on its loan balance after credit for the value of the collateral." *In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998). For reasons of its own, the bank rejected this approach, opting to proceed as an unsecured creditor. It is too late in the day to choose a different tack. With respect to both loans, the bank remains an unsecured creditor.

B.

Even if the bank remains an unsecured creditor, it claims the right to enforce the reaffirmation agreement. That argument is difficult to square with Kentucky mutual mistake law and the nature of reaffirmation agreements. *See* 11 U.S.C. § 524(c) (a reaffirmation agreement "is enforceable only to any extent enforceable under applicable nonbankruptcy law").

At first glance, a reaffirmation agreement makes little sense. Why would debtors opt to pay what they need not—a debt the bankruptcy proceeding promises to discharge? The central point of seeking bankruptcy protection after all is to relieve the debtor of some or all of these obligations, not to lock them in. "The answer . . . is that the debtor may prefer to retain the property in which his creditor holds a secured interest, rather than avoid paying the creditor but lose the property to repossession or foreclosure." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 912–13 (7th Cir. 2001); *see also In re Diamond*, 346 F.3d 224, 228 n.3 (1st Cir. 2003). From the debtor's perspective, a reaffirmation agreement thus permits him to maintain possession of collateral that otherwise would be

forfeited to the secured creditor—in this case, the truck and real property—so long as the bankruptcy court approves the agreement and so long as it is enforceable under the relevant state law.

A debtor theoretically might try to reaffirm an *unsecured* debt as well. Yet, as a matter of economic self-interest, debtors rarely take this route. Because a debt to an unsecured creditor has no link to any property, the debtor usually has no reason to reaffirm the debt rather than discharge it in bankruptcy. For this reason, bankruptcy courts rarely approve such agreements. "[T]he best interest of a debtor ordinarily requires the denial of a reaffirmation of an unsecured debt," *In re Kamps*, 217 B.R. 836, 851 (Bankr. C.D. Cal. 1998), prompting courts to show "great reluctance" in "allow[ing] reaffirmation in cases of unsecured obligations." *In re Smith*, No. 10-02784, 2011 WL 671994 (Bankr. N.D. Iowa Feb. 17, 2011).

In some ways, none of this matters. When the Baileys signed the reaffirmation agreement, they determined that they were better off by reaffirming their debts to the bank. Whether this was a prudent decision—and whether the agreement would have imposed an undue hardship, *see* 11 U.S.C. §§ 524(c)(3)(B), (c)(6)(A)(i)—are questions we need not answer. The Bankruptcy Code "permits reaffirmations of unsecured as well as secured debt," *In re Kinion*, 207 F.3d 751, 756 (5th Cir. 2000), even if bankruptcy courts tend to be more skeptical of the one than the other. So why not hold the Baileys to their bargain and require them to honor the reaffirmation agreement?

Because state law does not allow it. Although the Bankruptcy Code permits reaffirmation agreements, they must be enforceable under state contract law. *See* 11 U.S.C. § 524(c). Kentucky courts are rightly "reluctant to invalidate contracts which have been negotiated by parties," but occasionally "feel compelled . . . to take such a step." *Man O War Restaurants, Inc. v. Martin*, 932 S.W.2d 366, 368 (Ky. 1996). One such occasion is when both parties at the time of contracting are mistaken as to a "material fact," one "that goes to the root of the matter or the whole substance of the agreement." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006); *accord* Restatement (Second) of Contracts § 152(1) (1981) ("Where a mistake of both

parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake.").

In this instance, a reaffirmation agreement involving *unsecured* debt is not the bargain the Baileys and the bank made. The agreement confirmed the Baileys' objective of "reaffirming certain secured indebtedness and maintaining possession of property secured thereby." R.11 Ex. D at 1. The bank acknowledges that at the time of the reaffirmation agreement it believed—indeed, to this day it continues to insist—that it had a valid security interest in the property. "It defies logic," as the bankruptcy court noted, "to believe that the Debtors would reaffirm these debts" had the parties known they were unsecured, since the property and the truck would, subject to the Baileys' exemptions, be lost to the bankruptcy estate either way. R.11 Ex. A at 11. People generally do not agree to pay more than $150,000 in exchange for nothing.

Reaffirmation agreements involving unsecured debt, it may be true, are enforceable under state law and the Bankruptcy Code where the debtor *knew* he was reaffirming unsecured debt, but chose to do so in order to receive some benefit from the creditor. *See In re Jamo*, 283 F.3d 392, 400 (1st Cir. 2002); *cf. In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989). Yet the same is not true when the parties misapprehend the security status of the collateral. Bankruptcy courts have uniformly concluded that reaffirmation agreements involving unsecured debt that the parties mistakenly believed was secured are unenforceable under state law. *See, e.g.*, *In re Beaton*, 211 B.R. 755, 759 n.7 (Bankr. N.D. Ala. 1997); *In re Hitt*, 137 B.R. 401, 405 (Bankr. D. Mont. 1992); *In re Mandrell*, 50 B.R. 593, 595–96 (Bankr. M.D. Tenn. 1985). *But cf. In re McCreless*, 141 B.R. 223, 224 (Bankr. N.D. Fla. 1992) (holding, without any discussion of state contract law, that such a reaffirmation agreement is not automatically void under federal bankruptcy law).

It is hard to think of any fact more basic to a reaffirmation agreement than whether the creditor has a secured, perfected interest in the property involved. If the interest is unperfected (and the value of the property exceeds the debtor's exemptions),

the bankruptcy trustee will avoid the creditor's lien on the property and sell the property for the benefit of the bankruptcy estate, leaving the debtor with nothing to show for reaffirming the debt. Kentucky law recognizes that if a mutual mistake between contracting parties regarding whether a debt is secured or unsecured has a material effect on the agreed exchange, the adversely affected party is entitled to relief. *See Overstreet v. Barr*, 72 S.W.2d 1014, 1015–16 (Ky. 1934). So does the Restatement of Contracts; indeed, it contains an illustration about the precise point: "A contracts to assign to B for $100 a $10,000 debt owed to A by C, who is insolvent. Both A and B believe that the debt is unsecured and is therefore virtually worthless, but in fact it is secured by stock worth approximately $5,000. The contract is voidable by A." Restatement (Second) of Contracts § 152 cmt. b, illus. 5; *see New Headley Tobacco Warehouse Co. v. Gentry's Ex'r*, 212 S.W.2d 325, 327 (Ky. 1948) (following Restatement of Contracts generally). Although it is no doubt true that courts should hesitate to use mutual mistake "to avoid the results of an unhappy bargain," *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990); *see generally* Eric Rasmusen & Ian Ayres, *Mutual and Unilateral Mistake in Contract Law*, 22 J. Legal Stud. 309 (1993), this case falls within the narrow confines of the doctrine under Kentucky law.

III.

For these reasons, we affirm.